## CARROLL V. THE STATE OF ARKANSAS.

1. CRIMINAL PRACTICE: *Admitting improper testimony.*
   A defendant is not prejudiced by the court's admitting, and afterwards excluding, improper testimony against him, where he gives the same testimony for himself.

2. CRIMINAL EVIDENCE: *Uxoricide: Antecedent violence of defendant.*
   On the trial of a party for the murder of his wife, evidence of his recent acts of personal violence upon her, coupled with oaths, is admissible to show the state of his feelings towards her and the manner in which they lived.

3. CRIMINAL PRACTICE: *Refusing instructions already given.*
   There is no error in refusing to give instructions asked by a defendant which have already been substantially embodied in instructions given by the court.

4. CRIMINAL LAW: *Accessory: Concealment of crime.*
   One who knowing of a crime conceals it from the magistrate from anxiety for his own safety, and not to shield the criminal, is not an accessory after the fact, nor, in that sense, an accomplice.

5. INSTRUCTIONS: *As to what constitutes an accomplice.*
   A defendant who claims that a witness against him was an accomplice in the crime and must be corroborated, has the right to have the court instruct the jury what constitutes an accomplice; but if he fails to ask such an instruction he cannot complain of the omission of the court to give it.

APPEAL from *White* Circuit Court.

Hon. M. T. SANDERS, Circuit Judge.

Carroll v. The State of Arkansas.

*J. F. Rives, Jr.*, for Appellant.

1.   The court erred in admitting *incompetent,* yet *relevant* and *material,* testimony, and could not cure the error by attempting to exclude it.   *44 Ark., 334; 38 Id., 237; 66 Ill., 219; 79 Id., 402; 123 Mass., 222, 232, 236; 25 Am. Rep., 84–5; 6 Hill, 518.*

2.   The testimony of Johnnie Rison, as to appellant's striking his wife on a former occasion and at a different time, was inadmissible.   That was a separate and distinct offense.   *6 Hill, 518; Whart. on Cr. Ev., Secs. 61–64; 38 Ark., 226; 43 Id.; 104; 38 Id., 237.*

3.   A party has a right to insist that a proper charge be given in the terms in which it is asked, and if it is not, but the substance only be given, it is error.   *13 Ala., 231; 11 Id., 159.*

4.   The court erred in giving instructions 1, 2, 3, 4 and 5, especially Nos. 2 and 3.   *36 Ark., 117, 126,* especially its definition of an *accomplice. Id; Russell on Crimes, p. 20; 43 Ark., 368.*

5.   Reviews the testimony and contends that it was :

1.   Either an accident ; or,

2.   Viney Tidwell did the deed.

Also argued the case orally.

*Dan W. Jones,* Attorney General, for the State.

The third instruction properly given.   *43 Ark., 367.*

The evidence based on rumor was excluded, and the presumption is their verdict was based upon other evidence.   *43 Ark., 102.*

Also argued orally.

Carroll v. The State of Aakansas.

BATTLE, J.   George Carroll was indicted in the White cir-
cuit court for killing Lizzie Carroll.   The offense charged in
the indictment is murder in the first degree.   He was tried for
and convicted of this offense.   He filed a motion for new trial,
and a motion in arrest of judgment, which were overruled and
he appealed.

· The facts stated in the indictment are sufficient to constitute
murder in the first degree.

One ground of the motion for a new trial is, the admission
of the testimony of witnesses as to rumors.   These rumors
were that Carroll and Viney Tidwell were criminally intimate.
After the admission of this testimony the court excluded it and
instructed the jury not to consider it in making up their
verdict.

*1. Admitting improper evidence.*

It was proved that Lizzie Carroll, the deceased, was the
wife of defendant, and that they and Viney Tidwell lived in
the same house during the same period of time.   The defend-
ant testified in his own behalf that he had sexual intercourse
with Viney Tidwell; and that he did not know but supposed
she was pregnant.   This being true, the testimony excluded
could not have prejudiced him.

Another ground of the motion for a new trial is, the court
erred in admitting the testimony of Johnnie Rison.   He testi-
fied that he saw the defendant strike his wife, the deceased,
twice, about two weeks before she was killed, and that at the
time he did so he uttered oaths.   This was admissible to show
the state of defendant's feelings towards his wife, and the man-
ner in which they lived.

*2. EVIDENCE: Of antecedent violence.*

· Another ground of the motion of new trial is, the court
erred in refusing to give certain instructions to the jury asked
for by the defendant.   These instructions were substantially
embodied in instructions given to the jury by the court.   It
was unnecessary to give instructions already given, in different

*3. Refusing instruction already given.*

words. The defendant could not be prejudiced by the refusal to do so, and had no right to complain. There was no error in such refusal.

Another ground of the motion for new trial is, the court erred in giving the instructions numbered 1, 2, 3, 4 and 5. These instructions are as follows:

1. "The commission of crime may be proved by direct or by circumstantial evidence. When the existence of any fact is attested by witnesses as having come under the cognizance of their own senses, the evidence of the fact is said to be direct or positive; when the existence of the principal fact is only inferred from one or more circumstances which have been established directly, the evidence is said to be circumstantial."

2. "Circumstantial evidence is the proof of such facts and circumstances connected with the commission of the crime charged, as tend to show the guilt or innocence of the accused, and if the facts and circumstances proven by the preponderance of evidence are such as to satisfy the jury beyond a reasonable doubt, then such evidence is entitled to the same weight as direct or positive testimony, and sufficient to warrant a verdict of guilty. But to justify a conviction on circumstantial evidence alone it must be of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty. If the circumstances proven establish the guilt of the defendant in the minds of the jury beyond a reasonable doubt they would be justified in finding him guilty, notwithstanding the evidence may not be as satisfactory to their minds as the positive testimony of credible witnesses."

3. "An accomplice is a person who knowingly, voluntarily, and having common intent with the principal offender, unites in the commission of a crime. The co-operation must be real, not merely apparent. Whether the witness, Viney Tidwell, was an accomplice in the alleged murder of the deceased, Liz-

zie Carroll, is a question of fact for the jury to determine from the testimony. If she was not an accomplice her testimony must be received, considered and weighed the same as the testimony of other witnesses. But if the jury find from the evidence that she was an accomplice in the perpetration of the alleged crime of murder, a conviction of the defendant could not be had upon her testimony alone. It must be corroborated by other evidence tending to connect him with the commission of the crime, and the corroboration is not sufficient if it merely shows the offense was committed, and the circumstances thereof."

4. "The witness, Viney Tidwell, was jointly charged and indicted with the defendant for the alleged murder of Mrs. Carroll. The State, by its prosecuting attorney and leave of the court, have dismissed the indictment as to her, but this fact is not to be taken into consideration by the jury in determining the guilt or innocence of defendant. The jury are the exclusive judges of the testimony and credibility of the witnesses. If evidence is conflicting, it is their duty to reconcile and harmonize conflicting statements, if they can, so as to make each witness speak the truth, but if this cannot be done, then it is the province of the jury to credit so much of the evidence as they deem under all the circumstances worthy of belief, and discredit that which they deem unworthy of belief."

5. "The jury are instructed that it is not necessary to prove the existence of a motive before they can convict upon circumstantial evidence. If such evidence establishes guilt beyond a reasonable doubt, they would be justified in finding a verdict of guilty, although the testimony may fail to show a motive to commit the deed."

To all these instructions, in gross, the defendant excepted, as shown by the bill of exceptions.

It is insisted by appellant that the second one of the above instructions is erroneous, because " it directs the jury to accept

facts and circumstances as proved by a mere preponderance of evidence, when these facts and circumstances are to be the basis of inference for their verdict, and because it directs that the jury may find defendant guilty upon less satisfactory evidence than the testimony of credible witnesses." In this the defendant is mistaken. The court did not say that such facts and circumstances so proven should be accepted as true, but that when "they are such as to satisfy the jury beyond a reasonable doubt, then such evidence is *entitled to the same weight as direct or positive testimony*, and sufficient to warrant a verdict of guilty. But to justify a conviction on circumstantial evidence alone," said the court, "it must be of such character as to exclude every reasonable hypothesis, other than that the defendant is guilty."

In these instructions the court told the jury that they "are the exclusive judges of the testimony and the credibility of the witnesses."

At the instance of the defendant the court instructed the jury as follows: "The law clothes a person accused of crime with a presumption of innocence, which attends and protects him until it is overcome by testimony which proves his guilt beyond a reasonable doubt. Beyond a reasonable doubt, which means that the evidence of his. guilt, as charged, must be clear and abiding, fully satisfying the minds and consciences of the jury. It is not sufficient, in a criminal case, to justify a verdict of guilty, that there may be strong suspicions, or even strong probabilities, of guilt, nor, as in civil cases, a *preponderance* of evidence in favor of the truth of the charge against the defendant; but what the law requires is proof by *legal and credible* evidence, of such a nature that when it is all considered by the jury, giving to it its natural effect, they feel, when they have weighed and considered it *all*, a clear and entirely satisfactory conviction of the defendant's guilt."

Appellant insists that the court erred in instructing the jury as to what is necessary to constitute an accomplice.

*4. ACCESSORY:*
*Concealment of*
*crime.*

In *Polk v. The State, 36 Ark., 126,* Mr. Justice EAKIN, in delivering the opinion of the court, said: "An accomplice, in the full and generally accepted legal signification of the word, is one who, in any manner, participates in the criminality of an act, whether he is considered in strict legal propriety as a principal in the first or second degree, or merely as an accessory before or after the fact."

*Sec. 1507, of Mansf. Dig.,* declares: "An accessory after the fact is a person who, after a full knowledge that a crime has been committed, conceals it from the magistrate, or harbors and protects the person charged with or found guilty of the crime."

In *Melton v. The State, 43 Ark., 371,* this court said: "But we incline to the opinion that Lawrence was not, in the eye of the law, an accomplice in the murder. The guilt of an accomplice must be legal guilt, not merely a participation reprehensible in morals. *1 Bish. Cr. Pro., 3 ed., Sec. 1159.* No indictment could have been sustained against him for the murder of Hale. He was not present when the crime was committed, nor does it appear that he encouraged its perpetration. His sole connection with the affair was membership in the same unlawful association, assisting at the castigation of Hale, some time before, and participation in a meeting at which Hale's death was resolved upon. But it seems he dissented from the conclusion which was reached and did nothing to further the execution of the plot. His subsequent concealment of the crime was the result of anxiety for his own safety, and not of a design to shield the guilty parties."

The evidence upon which the instructions of the court below, as to accomplices, were based, was the testimony of Viney Tidwell. She testified, among other things, as follows: On

34——45

Saturday before the second day of February, 1885, "there was some fuss" in defendant's family. On Sunday, following, Carroll "got mad" about something, and at night told me he intended to drown Lizzie Carroll, the deceased, in the well. He said that he would get up early, and just before he started to his work he would call Lizzie and tell her to come and draw the water to wash, as he had to carry the well-rope to Mr. Andrews as it belonged to him. I had washed on Saturday, but Lizzie had not finished washing Saturday, and had some washing to do on Monday morning. On Monday morning, the second day of February, 1885, "we got up at half-past four o'clock and got breakfast." After breakfast Carroll sat down awhile. "We fixed about the breakfast things a little, and then Carroll got up and went out." After he was out a short time he called Lizzie and told her to come and draw up the water to wash, as he had to take the rope to Mr. Andrews. Lizzie took the bucket and went out. " I was dressed at the time, but fell back on the bed, and put my hands to my ears, as I believed Carroll would throw her into the well and I did not want to hear her. I did not hear anything for some time. Then Carroll came to the door and told me to be sure to wait until he had time to get to his work and then hallow and give the alarm. When I thought he had time to get to his work I went out to the well, and looked in and saw what I thought was Lizzie's entrails and hair. This frightened me very much and I screamed. After awhile Mr. Smith came and I told him that Mrs. Carroll was in the well and to go and tell Carroll. I was very much excited. I then went to the house and staid there until defendant came. He came in the house and then went out and told me to call Mr. Spurl, who was working near the house. After that several others came. When a large crowd got there Lizzie's body was taken out of the well. She was dead. I was afraid to tell Mr. Spurl, or the others who came, that Carroll had thrown Lizzie into the well. I was afraid to tell until May or June, 1885. I was afraid if Carroll got away

he would kill me.  I wanted to see Carroll fastened before I made the disclosure.  I determined to tell while I was in prison."

According to the opinion of this court in *Polk v. the State* and *Melton v. the State, supra,* and the testimony of Viney Tidwell, if true, she was not an accessory after the fact and in that sense an accomplice.  Her testimony was the only evidence of her knowledge of the commission of the crime; without it the evidence introduced in the trial was not sufficient to convict Carroll of murder in the first degree.  It is evident the jury believed her, and had the court instructed them as to what is necessary to constitute an accomplice according to the opinions of this court cited above, their verdict would have been the same.

Had the court below been asked by the defendant to instruct the jury as to what is necessary to constitute an accomplice, according to the opinions in *Polk v. the State* and *Melton v. the State,* it would probably have done so.  But he did not do so, nor except to the instructions given on that point, separately, singly and apart from the instructions excepted to in gross.  On the contrary it seems he concurred with the court as to the law of the case in that respect and asked for an instruction to the same effect.  For, at his instance, the court instructed the jury as follows:  " If the jury believe from the evidence that the witness, Viney Tidwell, was concerned or engaged in the killing of Lizzie Carroll, or encouraged by words, or aided by acts, any one else in killing her, then, in order to convict upon the testimony, it must be corroborated by other evidence in such material fact necessary to convict the defendant, and such corroborating testimony must tend to connect him with the killing."

*5. Instructions as to what constitutes an accomplice.*

The defendant was entitled to an instruction upon what is necessary to constitute an accomplice, in accordance with the opinions of this court cited upon that subject, if he had asked

it. But having failed to ask it, or, in fact, except to it, as appears from the fact that he asked for an instruction to the same effect, is he now entitled to a new trial because the instruction was not given?

In *Benton v. The State, 30 Ark., 335*, one ground of the motion for a new trial was, "the court erred in failing to read to the jury, as part of its charge, the whole law applicable to homicide, but confined itself in the charge to cases of murder in the first and second degree." "It appeared by the bill of exceptions, that after the court had given the instructions asked for by the state, and nine asked for by the prisoner, being all asked on his behalf, the court, of its own motion, gave a general charge to the jury. No exception appeared to have been taken to the charge given, and the only objection made to it in the motion for a new trial, was that it did not go far enough; that the judge did not read to the jury the whole law applicable to homicide, but such only as applies to cases of murder in the first and second degrees." Chief Justice ENGLISH, in delivering the opinion of the court, said: "It is the province of the court to give in charge to the jury such principles of the law as it may deem applicable to the case. If a party desires other instructions he may move them, and the court will give or refuse them, according to its judgment of their correctness or applicability. If refused, the party asking them may except to the opinion of the court. If objected to by the opposite party, and given, he may except. So either party may except to the general charge of the court. If the charge be the enunciation of several distinct principles, either party may except to any one or more of them. If all are deemed objectionable, each and all of them may be excepted to. But the exception should not be general to a number of distinct enunciations, but specific."

"While in one sense," says Mr. Bishop, "it is undoubtedly the duty of the judge to give instructions to the jury, cov-

ering the entire law of the case, as respects all the facts proved, or claimed by the respective counsel to be proved, still, if he omits something, and is not asked to supply the defect, the party who remained voluntarily silent cannot complain." *1 Bishop Cr. Pro., Section 980; Dave v. State, 22 Ala., 23; Burns v. Commonwealth, 3 Met., (Ky.,) 13; Farris v. State, 15 Fla., 591; People v. Ah Wee, 48 Cal., 236; Mercer v. State, 17 Ga., 146; Mason v. People, 2 Col., 373; The State v. Bogain, 12 La. Ann., 264; Commonwealth v. Costly, 18 Mass., 1; People v. Rodundo, 44 Cal., 538; The State v. Smelser, 12 La. Ann., 386; The State v. O'Neal, 7 Ire., 251.*

In this case the court was not asked to supply the defect, but instead of doing so the defendant asked, and the court gave, an instruction to the same effect as that now complained of. He therefore had no right to complain.

The verdict of the jury is sustained by sufficient evidence.

There was no error in the overruling of the motions for new trial and in arrest of judgment. The judgment of the court below is affirmed.