JESS HENDERSON *v.* STATE OF ARKANSAS

CR 73-129                                    503 S.W. 2d 889

Opinion delivered January 14, 1974

*Charles W. Atkinson,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Jess Henderson relies upon five points for reversal of his conviction of the offense of delivery of a controlled substance, heroin. They are:

I. The Court erred in refusing to quash the indictment.

II. The Court erred in refusing to grant a mistrial.

III. The Court erred in refusing to grant a directed verdict.

IV. The Court erred in refusing to give defendant's requested Instructions No. 1 and 3.

V. The Court erred in refusing to grant a new trial.

We find no merit in any of them.

I. Appellant was indicted by a grand jury. He was charged with unlawfully delivering heroin on May 11,

1972, in violation of Act 67 of 1972 and Act 590 of 1971. The name of the person to whom the delivery was made was not alleged in the indictment. The indictment did not specifically allege that appellant was not a person authorized to deliver heroin. His motion to quash the indictment, which included these and other grounds not argued here, was denied. The trial court, however, treated his pleading as a motion for a bill of particulars. The state filed a bill of particulars, stating that the delivery was made to Janice Sue Smith. No further objection to the indictment was made by appellant prior to trial. The action of the trial court was proper under Ark. Stat. Ann. § 43-1024 (Repl. 1964) which permits the prosecuting attorney to amend an indictment or file a bill of particulars. The bill did not, however, state that Henderson was unauthorized to deliver such drugs. There was no error in this respect. It was only necessary that the indictment name the offense and the party charged. Ark. Stat. Ann. §§ 43-1006, 1008 (Repl. 1964). It is not necessary that the acts constituting the offense be stated unless the offense could not be charged without doing so. *Estes* v. *State,* 246 Ark. 1145, 442 S.W. 2d 221. The act which appellant was accused of violating contains a section, now appearing in Ark. Stat. Ann. § 82-2630 (Supp. 1971), providing that it is unnecessary for the state to negate any exemption or exception in the act in any indictment and that the burden of proof of any exemption or exception is upon the person alleging it. This section also contains a provision that in the absence of proof that a person is the duly authorized holder of an appropriate registration, he is presumed not to be, and that the burden of proof is upon that person to rebut the presumption. The act under which appellant was charged provides that "[e]xcept as authorized by this Act, it shall be unlawful for any person to deliver, * * * a controlled substance." There was no error in this regard.

II. Appellant's contention that a mistrial should have been granted is based upon multiple actions of the trial judge. After the jury was selected but before any evidence had been presented, appellant, out of the hearing of the jury, registered an objection to the introduction of any evidence pertaining to any crime other than that charged in the indictment, and, specifically, relating to the death of Janice Sue Smith, to whom the state contended the heroin was delivered. The trial judge refused

to restrict the prosecuting attorney at that time, but admonished him not to inject this fact unless necessary. During the opening statement by the prosecuting attorney, appellant's objection to a statement to the effect "that we are dealing with human lives" was overruled. The first witness called was Dr. Mae Nettleship, who, in responding to a query whether she had done a drug or blood analysis on Janice Sue Smith, stated that she had done an autopsy. Appellant's attorney promptly objected, asked that the jury be admonished not to consider this statement and warned that, upon repetition, he would request a mistrial. The court did not specifically rule on the objection or admonish the jury. Later, when asked if it were possible for her from her observations to make a determination as to the time of injection of heroin, this witness stated she and Dr. Vinzant worked together, and he always made the observations and conclusions in relation to the time of death. When appellant objected, the circuit judge admonished the jury to disregard that part of the testimony relating to death. No motion for the declaration of a mistrial was made.

Thereafter, the prosecuting attorney was permitted to question Dwight Wells, over appellant's objection, about his having purchased heroin from appellant on the date the offense was alleged to have occurred. When the prosecuting attorney repeated a question to Wells, a witness called by the state, as to whether he saw appellant give any drugs to Janice Sue Smith, appellant's attorney objected on the basis that this was an attempt to impeach the state's witness. The prosecuting attorney then asked and received permission to treat Wells as a hostile witness, claiming surprise on the basis of a pretrial statement made by him to the prosecuting attorney. The court granted this permission and allowed the prosecuting attorney to ask leading questions, all over appellant's objection. After a few questions with reference to testimony given the prosecuting attorney by Wells some time before the trial, appellant's attorney objected and moved for a mistrial on the basis of these questions, together with the circuit judge's remarks in overruling appellant's objection that the witness was not hostile, that it was sufficient that the prosecuting attorney was taken by surprise, that the witness was a hostile witness and that the prosecuting attorney could ask leading questions. After the witness had been extensively examined and cross-examined about

the statement, the prosecuting attorney asked the witness whether the content of the statement or his testimony was the truth. When the court overruled appellant's objection that the question invaded the province of the jury as the judges of the credibility of the witness, appellant moved for a mistrial on the basis of the court's remarks.

Although appellant seems to take the position that he made numerous motions for a mistrial, we find only two occasions when such a motion was made, and they related more particularly to remarks by the circuit judge. There was no error in the court's holding that there was a basis for the claim of surprise, so it was proper for the court to permit the prosecuting attorney to cross-examine Wells about his prior inconsistent statement. Ark. Stat. Ann. § 28-706 (Repl. 1962); *Fisher* v. *State*, 241 Ark. 545, 408 S.W. 2d 894; *Shands* v. *State*, 118 Ark. 460, 117 S.W. 18. We find no abuse of discretion in permitting the cross-examination or denying the motions for mistrial.

III. Appellant contends there is no evidence that he delivered heroin to Janice Sue Smith. This question must be approached with the understanding that the delivery may be shown by circumstantial, as well as direct, evidence. See. *Miller* v. *City of Helena,* 224 Ark. 1016, 277 S.W. 2d 841; *Dixon* v. *State,* 67 Ark. 495, 55 S.W. 850; *Wimberly* v. *State,* 214 Ark. 930, 218 S.W. 2d 730. As we view the matter, appellant's principal complaint is that there is no direct evidence that he made the delivery. But we find the circumstantial evidence to rise above that we have held to be insufficient in other cases because it left the jury only to speculation and conjecture in determining whether any other hypothesis except the defendant's guilt was reasonable. See, e.g., *Jones* v. *State*, 246 Ark. 1057, 441 S.W. 2d 458.

In spite of the fact that Dwight Wells, the principal witness for the state, was obviously reluctant to testify in the case, and there were conflicts and inconsistencies in his testimony, we cannot say that it was not substantial. Wells, a resident of Huntsville, said he had lived with Janice Sue Smith off and on for four or five years, and was living with her on May 11, 1972, the date of the alleged offense. There are many facts disclosed by Wells' testimony

which are undisputed and as to which there is no question about the inferences to be drawn. He testified to the following before being granted immunity from prosecution:

> He had been a user of whatever drug was available including heroin. The Smith girl also used drugs including heroin. He had known Henderson for a couple of years, and had purchased drugs from him on several occasions. On May 11, 1972, he and Janice Sue came to Fayetteville in Wells' car to get some drugs.

When asked to whom he went to obtain the drugs, Wells responded that he'd rather not answer the question. The prosecuting attorney stated he would like to grant the witness immunity from prosecution, and appellant objected. The court directed the witness to answer, advising him that testimony he gave would not be used against him in a criminal prosecution, except for perjury. The witness still seemed reluctant to answer the prosecuting attorney's questions, but said that he saw Janice get her drugs. When asked if she got them from Henderson, Wells said he'd rather not say and then denied knowledge of the identity of the person from whom she got her drugs. He stated that she saw Henderson, that he (Wells) was present and received an affirmative answer to his inquiry whether Henderson had any drugs, and that Henderson gave Wells some heroin wrapped in a little package at the time Janice Sue was in another room. He then related substantially the following:

> He and Janice Sue arrived at Henderson's apartment on Cleveland Street about dark, but found him at a house next door. They then went with Henderson to his apartment. Wells took with him the drugs given him by Henderson, which were worth $10 and wrapped in a little package. Janice Sue did not have any drugs at that time, but did later. Wells did not know where she got the drugs, and did not hear any conversation between her and Henderson about drugs, but he was present when she used the drugs she had about 45 minutes to one hour after they arrived. After using the drugs Janice Sue stayed in the bathroom and later "fell over."

After objections to impeachment of the witness were made and overruled, Wells was asked about his recollections concerning a statement he had made to the prosecuting attorney on July 24, 1972. He recalled testifying before the prosecuting attorney that Janice Sue Smith was at Henderson's apartment on Cleveland Street when she got $10 worth of heroin from Henderson and admitted that these statements were true, as far as he knew. He also affirmed the correctness of his answers that the heroin was wrapped in tinfoil, that he got his heroin just a few minutes before Janice got hers, that he was to pay $10 for his and had the same understanding with Henderson in relation to that which Janice got. He also admitted that Henderson handed the heroin to Janice, as far as he knew. Wells then testified that, between him and Janice, he bought two "hits" at $10 each or a total of $20.

On cross-examination, Wells confirmed much of his previous testimony. He admitted making the statement to the prosecuting attorney and that his father was present at the time. He said his attorney was present at the beginning of it. He declined to say that the content of the statement was untrue. Specifically he said:

He had previously bought drugs from Henderson in Fayetteville several times when Janice was present. He was not present when Janice got drugs from anyone on May 11, 1972, and did not see Henderson deliver any narcotics to her on that occasion or hear any conversation between Janice and Henderson. He did see Janice while at Henderson's with heroin wrapped in tinfoil. Henderson and another man were the only persons present at the house where he found Henderson. They all remained at this house for about a half hour, but no one else was present when he received his drugs from Henderson. When he took the drugs at Henderson's house, he used the syringe that Henderson also used in his presence.

After cross-examination, Wells explained the difference in his testimony and the statement by saying he did not see Henderson put the drugs in Janice's hand, but, while he and Janice were in the kitchen, she went into the bathroom with drugs at a time when only he, Janice and Henderson were in the house. He also reaffirmed

his statement that he and Henderson had discussed money at the house to which he and Janice first went.

On recross-examination, Wells again said: It was true, as he had told the prosecuting attorney, that he helped Janice "shoot up." Both his pretrial statement and his testimony were true.

Whatever contradictions, conflicts and inconsistencies there were in Wells' testimony from the witness stand were for resolution by the jury, which could believe those parts of his testimony they believed to be true and disregard those they believed to be false. *Reserve Loan Line Ins. Co.* v. *Compton*, 190 Ark. 1039, 82 S.W. 2d 537; *Houpt* v. *State*, 249 Ark. 485, 459 S.W. 2d 565; *Bartley and Jones* v. *State*, 210 Ark. 1061, 199 S.W. 2d 965; *Powell* v. *State*, 149 Ark. 311, 232 S.W. 429. Most of the contradictions were more apparent than real. They arise by reason of Wells having stated to the prosecuting attorney that Henderson delivered the drugs to Janice Sue Smith and his having testified during the trial that he did not see the delivery made. The jury would have been justified in concluding that Wells' statement to the prosecuting attorney was based upon circumstances which clearly indicated to him that the delivery was made by Henderson. We think the evidence clearly affords a reasonable basis for that belief, both by Wells and by the jury. We find the circumstantial evidence sufficient to support the jury verdict.

Appellant also argues that the testimony of Wells, who was treated by the trial court as an accomplice as a matter of law, was not sufficiently corroborated. Euletta Mae Jones, another reformed drug addict, testified that she had been acquainted with Wells, Henderson and Miss Smith in May 1972. She knew that Janice Sue had an overdose of drugs on May 11, 1972, at Jess Henderson's house. She had gone to the Henderson house that evening and found Wells, Henderson and Janice Smith there, but left when she learned what had happened. According to Mrs. Jones, those present were worrying about Janice. On a subsequent date she went to Henderson's place with him. While there, Henderson started talking about the events of May 11. He told Mrs. Jones that he had intended to "do the first hit," as he had always done, but Janice wanted to "do it because she hadn't gotten

off in a long time." According to Mrs. Jones, he stated that when Janice insisted, he went ahead and let her do the first hit.

In spite of the fact the trial court considered Wells to be an accomplice of Henderson under the evidence, we do not so consider him. He was nothing more or less than a purchaser of heroin for use by his paramour. If he was the accomplice of anyone, it was Janice Sue Smith, not Jess Henderson. The purchaser is not the accomplice of the seller, nor the recipient, of the deliverer, in spite of the fact that mere possession is a violation of the law defined by the same statute as that under which a defendant is charged. We have passed specifically upon the question where it was asserted that the purchaser was an accomplice of the seller. See *Sweatt v. State,* 251 Ark. 650, 473 S.W. 2d 913.

There is some apparent conflict in the authorities from other jurisdictions as to whether one who recommends, or directs a purchaser to, a seller of illicit drugs is an accomplice of the seller. In Arkansas, an accomplice, under the statute forbidding conviction of a felony on uncorroborated testimony of an accomplice, is one who could be convicted of the offense of which the defendant is charged. *Havens v. State,* 217 Ark. 153, 228 S.W. 2d 1003. In *Rich v. State,* 176 Ark. 1205, 2 S.W. 2d 40, we held, upon the authority of *Wilson v. State,* 124 Ark. 477, 187 S.W. 440, that one who assists a purchaser in buying intoxicating liquors and confines his participation in the transaction exclusively to the buying, not the selling, is not guilty of the offense, and not an accomplice. See also, *Eddy v. State,* 165 Ark. 289, 264 S.W. 832; *Hobson v. State,* 175 Ark. 1169, 299 S.W. 8. We have also held that one who was employed as a laborer in the operation of a whiskey still and was an accomplice in its operation and in manufacturing liquor, was not an accomplice of his employer in the possession of the still, because he could not be convicted of the crime of possessing a still, either as a principal or accessory. *Henderson v. State,* 174 Ark. 835, 297 S.W. 836. In *Beck v. State,* 141 Ark. 102, 216 S.W. 497, we held that one who acted only as the agent of the buyer of intoxicating liquors and had no other interest in the sale, was not an accomplice of the seller. So long as one acts solely on behalf of the purchaser, he is not an

accomplice of the seller. *Ellis* v. *State*, 133 Ark. 540, 202 S.W. 702.

Under the same rationale, other jurisdictions have held that a "facilitator" of a sale of illicit drugs is not an accomplice of the seller, so long as he is interested only on behalf of the buyer. See *United States* v. *Moses*, 220 F. 2d 166 (1955); *People* v. *Branch*, 13 App. Div. 2d 714, 213 N.Y.S. 2d 535 (1961); *Commonwealth* v. *Harvard*, 356 Mass. 452, 253 N.E. 2d 346 (1969); *People* v. *Lindsey*, 16 App. Div. 2d 805, 228 N.Y.S. 2d 427, aff'd 12 N.Y. 2d 958, 238 N.Y.S. 2d 956, 189 N.E. 2d 492 (1963). These holdings are more compatible with our general test of the status of a witness as an accomplice and with our cases relating to dealing in intoxicating liquors than decisions in jurisdictions holding to the contrary.

There is not a word of evidence to align Wells with the alleged deliverer, Henderson, in this case. His entire interest, so far as this record discloses, was to obtain the heroin for his paramour. Furthermore, even if Wells were properly treated as an accomplice of Henderson, the statements attributed to appellant by Mrs. Jones certainly tended to connect him with the delivery of heroin to Janice Sue Smith. Certainly someone delivered this controlled substance to her. The testimony of Mrs. Jones, if believed, rather than going to show the commission of an offense, along with its attendant circumstances, definitely, but independently of the testimony of Wells, tends in some degree to connect Henderson with the delivery and rises above a mere suspicion of guilt. This was all that was required, even if this evidence itself be considered circumstantial. *Jones* v. *State*, 254 Ark. 769, 496 S.W. 2d 423; *King* v. *State*, 254 Ark. 509, 494 S.W. 2d 476. The sufficiency of this evidence was for the jury. *Austin* v. *State*, 254 Ark. 496, 494 S.W. 2d 472; *King* v. *State*, supra.

IV. Appellant's contention relating to the court's failure to give his requested instructions 1 and 3 is grounded upon the alleged failure of the court to advise the jury that, in order to find Henderson guilty, it must find that he was not authorized by law to deliver heroin. There was no evidence whatever that Henderson had any authority to do so. The circuit judge did instruct the jury that it was unlawful for any person to knowingly

880

deliver a controlled substance, unless pursuant to a valid prescription of a practitioner while acting in the course of his professional practice. This instruction, along with the instruction that the state must prove the defendant guilty beyond a reasonable doubt, was adequate to advise the jury on this score. In view of this coverage in other instructions, we find no prejudicial error in the refusal of these instructions.

V. The only grounds of appellant's motion for new trial that are argued here relate to points for reversal already discussed.

Since we find no reversible error, the judgment is affirmed.

HARRIS, C.J., not participating.