Billy Bert TYLER *v.* STATE of Arkansas

CR 79-30                                    581 S.W. 2d 328

Opinion delivered May 29, 1979
(In Banc)

*Ronald P. Kincade,* of *Kincade & Cunningham,* and *Robert A. Newcomb,* for appellant.

*Steve Clark,* Atty. Gen., by: *Ray Hartenstein,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was found guilty of theft of an automobile and sentenced to three years in the Arkansas Department of Correction. He seeks reversal of his conviction on the grounds that he was denied his right to counsel guaranteed by the Sixth Amendment to the Constitution of the United States, that he was denied due process of law by the trial court's failure to instruct the jury on the re-

quirement of corroboration of the testimony of an accomplice, and that the evidence was insufficient to support the jury's verdict. We find no reversible error and affirm.

Tyler was charged with theft by taking unauthorized control of a 1976 Chevrolet automobile belonging to Lefler Chevrolet Company. The information, filed May 11, 1978, charged that the offense occurred on January 27, 1977. The case was originally set for trial on October 11, 1978. Fred C. Kirkpatrick, the attorney employed by Tyler, had filed a motion for discovery, to which the state responded on October 12, 1978. The motion had been filed on June 28, 1978, so the state moved for a continuance in order to comply with the motion for discovery and to better prepare for trial. There was no objection on the part of appellant. The continuance was granted and the case set for trial on November 8, 1978. According to the prosecuting attorney, whose statement is not controverted, he was informed by Kirkpatrick, ten days before the trial date, and before the issuance of any subpoenas for the state's witnesses, that Kirkpatrick knew of no reason the subpoenas should not be issued. On Friday, however, before the case was to be tried on Wednesday, the prosecuting attorney was given some indication that appellant was not going to trial on the date set. Appellant filed no motion for continuance and no affidavit stating any ground for a continuance.

When this case was called for trial, Kirkpatrick announced that the defense was not ready and that Tyler had discharged him. He stated that, as an officer of the court, he felt obliged to state that the sole and only reason he was discharged was "because defendant wants a continuance." Kirkpatrick added that, as a result of his being discharged, he had not been able to get appellant's witnesses together and that he had not been paid anything to represent Tyler. There was no indication that this attorney was withdrawing from the case because he had not been paid. Tyler responded immediately, but did not deny Kirkpatrick's statement in any respect. He simply stated that he did not have another attorney and had not contacted one, that he had not gotten his witnesses together and that he could not get a lawyer until after the first of the year.

The trial judge then stated that he was not going to re-set the case and remarked that, lately, it seemed a ploy by people in Searcy County to show up in court on the day of trial without a lawyer in order to get a continuance. The judge said that he would make a concession, by trying another case that had been set for trial on that date, so Tyler could get an attorney and his witnesses while that trial was in progress, but that Tyler's case would be tried as soon as that case was concluded. The trial judge also stated that Kirkpatrick would be required to remain in the courtroom throughout the trial to assist Tyler, if Tyler desired such assistance.

When the trial judge said that he would require Kirkpatrick to be present in the courtroom, Tyler said that he did not want Kirkpatrick for a lawyer, and that "[w]e might as well go ahead with this case first then. It don't matter to me." When the judge remarked that Tyler had no intention of calling his witnesses, even if given some time, Tyler replied that there was no way he could get them, that they were working, and that he could not find them on the job. When the judge responded that it might be the next day before Tyler's case was started, and asked if Tyler desired the additional time, Tyler answered that there was not enough time to prepare a lawyer. The trial then proceeded.

During an in camera hearing on another matter, the judge admonished Tyler that he could not be required to testify but that if he wanted to, he would be given an opportunity to do so. The judge also reminded Tyler that Kirkpatrick was present and was sitting beside him in the courtroom ready to assist him in any way Tyler wanted. Tyler responded, "Me and him come to a disagreement on some other matters." Tyler continued saying, "This is a legitimate thing, really, because I didn't get my witnesses together. I had full intentions of waiting until after the first of the year to try my case on account of the election and everything. I felt if I waited until after the first of the year, things would be better organized and I would all around get a better trial and everything." At the conclusion of the in camera session, Tyler stated, "I would say that finances and everything to do with lawyers would be a reasonable cause for postponement."

Appellant concedes that the matter of a continuance is within the discretion of the trial court and that not every denial of a request for a continuance violates due process, even if the party is compelled to defend without counsel. See *Ungar* v. *Sarafite,* 376 U.S. 575, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964). Appellant, however, relies upon language in the *Ungar* opinion in arguing that "myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." In our view, the trial judge's insistence upon expeditiousness was far from myopic and the request for delay was farther from being justifiable. As pointed out in *Ungar,* the answer must be found in the circumstances of the case and particularly in the reasons presented to the trial judge at the time. The fact that the motion for continuance was not made until the day set for trial was there recognized as one important circumstance.

Appellant also relies upon the holding in *Chandler* v. *Fretag,* 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4 (1954), that, unless a defendant is given an opportunity to employ and consult with counsel, the right to be heard by counsel would be of little worth. We subscribe to that statement, but, in this case, Tyler had ample opportunity to employ, and did employ, counsel, but discharged him on the eve of trial. An important element in *Tollett* v. *U.S.,* 444 F. 2d 622 (8 Cir., 1971), also relied upon by appellant, was the fact that the trial court did not inquire of defendant as to the circumstances of the termination of his attorney's employment, and did not know whether the attorney had resigned or been discharged. That element makes *Tollett* distinguishable, because in this case, the judge was adequately informed as to the cause of termination and there was a rational basis for finding that the discharge of Tyler's attorney, on the eve of trial, was because that attorney recognized that Tyler had no grounds for a continuance and that, by one means or another, appellant was endeavoring to postpone his trial until after the first of the year and that the discharge of the attorney was a part of that effort. The fact that Tyler did not show that he had made any effort to employ another attorney was an important circumstance, since it was reasonable to infer that the discharge of Kirkpatrick had taken place five days before the trial was

to commence. The court that decided *Tollett* pointed out that questions such as this must necessarily be decided on an ad hoc basis, having pointed out that the United States Supreme Court had consistently maintained its "case by case" approach and that the Eighth Circuit had followed that rule. *Wolfs* v. *Britton*, 509 F. 2d 304 (8 Cir., 1975), also relied upon by appellant. The defendant in *Wolfs* was blameless in finding himself without counsel on the eve of trial. He was deprived of counsel when a conflict of interest arose between him and a codefendant, who decided to turn state's evidence.

The same court has held, in *U.S.* v. *White*, 529 F. 2d 1390 (8 Cir., 1976), that the right to counsel is a shield, not a sword, and that a defendant has no right to manipulate his right for the purpose of delaying the trial. See also, *Relerford* v. *U.S.*, 309 F. 2d 706 (9 Cir., 1962). It is significant here that, as in *White*, where the court said the evidence was insufficient to show intentional manipulation, the appellant made no showing that he was unable to obtain counsel, did not request the appointment of counsel, and declined the opportunity afforded to obtain other counsel. But unlike this case, the reason for the discharge of previously retained counsel in *White* was never disclosed or investigated. And in *Patton* v. *State of North Carolina*, 315 F. 2d 643 (4 Cir., 1963), also relied upon by appellant, there was evidence indicating that the defendant had just cause for discharging his employed counsel on the eve of trial and had made some effort to obtain substitute counsel.

It is widely recognized that the right to choose counsel may not be manipulated or subverted to obstruct the orderly procedures of the court or to interfere with the fair, efficient and effective administration of justice, particularly when a change of choice is made on the eve of trial, primarily for the purpose of delay, and without making any effort to obtain substitute counsel. *U.S.* v. *Bentvena*, 319 F. 2d 916 (2 Cir., 1963), cert. den. 375 U.S. 940, 84 S. Ct. 345, 11 L. Ed. 2d 271 (1963); *U.S.* v. *Merriweather*, 376 F.S. 944 (E.D. Penn., 1974); *U.S.* v. *Morrissey*, 461 F. 2d 666 (2 Cir., 1972); *Gandy* v. *State of Alabama*, 569 F. 2d 1318 (5 Cir., 1978); *U.S.* v. *McMann*, 386 F. 2d 611 (2 Cir., 1967), cert. den. 390 U.S. 958, 88 S. Ct. 1049, 19 L. Ed. 2d 1153 (1968); *U.S.* v. *Llanes*, 374 F. 2d 712 (2 Cir., 1967), cert. den., 388 U.S. 917, 87 S. Ct. 2132, 18 L.

Ed. 2d 1358 (1967); *U.S.* v. *Abbamonte*, 348 F. 2d 700 (2 Cir., 1965), cert. den. 382 U.S. 982, 86 S. Ct. 557, 15 L. Ed. 2d 472 (1966). It has been appropriately said that the right to counsel cannot be used to play a "cat and mouse game with the court," and held that, when it is, there is a waiver of the right and the court does not abuse its discretion in denying a continuance to permit employment of a new lawyer. *Leino* v. *U.S.*, 338 F. 2d 154 (10 Cir., 1964); *Relerford* v. *U.S.*, supra.

When the evidence had been completed, the circuit judge, in order to ascertain whether there were any objections to the instructions he proposed to give the jury, asked Kirkpatrick to go over them with Tyler. Kirkpatrick stated that there were no objections. No request for any additional instructions was made. Appellant now complains because the judge did not give an instruction, based upon Ark. Stat. Ann. § 43-2116 (Repl. 1977), that there must be corroboration of the testimony of an accomplice before an accused can be convicted of a felony. He contends that, under the evidence in this case, Coy White was an accomplice. He had the burden of showing that White was an accomplice, before such an instruction was appropriate. *McIntosh* v. *State*, 262 Ark. 7, 552 S.W. 2d 649. Appellant relies upon White's refusal to testify without having been given use immunity and White's admission that he had received the engine and transmission from the stolen car.

It is appellant's contention that, if White was guilty of receiving stolen property, he and the thief were accomplices, citing *Murphy* v. *State*, 130 Ark. 353, 197 S.W. 585 and *McCabe* v. *State*, 245 Ark. 769, 434 S.W. 2d 277. On this argument, we cannot give any weight to the granting of immunity because it does not appear from the record that White's claim of immunity was based upon a fear of prosecution for receiving the property. As a matter of fact, the record does not disclose the basis of White's refusal to testify without immunity. It was granted when White invoked his right against self-incrimination, after having been asked when he first saw the automobile. There was some evidence, particularly in the testimony of Tyler, that White might have been the thief. Tyler denied any connection with the stolen automobile except for having driven it out of the mud and to White's house, after coming upon the scene where the vehicle was stuck.

Tyler said that he was an employee of White at that time. White admitted that he had seen the vehicle stuck in the mud at St. Joe. It appears that White may have been seeking immunity from proseuction as the thief, rather than as the receiver. Under neither Tyler's version nor White's, does it appear that Tyler and White were accomplices, unless White was an accomplice as the receiver of stolen property.

We have held that the receiver of stolen property was an accomplice of the thief since *Murphy* v. *State,* supra, cited by appellant. That holding was based upon our previous holding that an accessory after the fact is an accomplice. See *Polk* v. *State,* 36 Ark. 117; *Stevens* v. *State,* 111 Ark. 299, 163 S.W. 778. In *Murphy,* we found that at least one jurisdiction considered the receiver as an accomplice within the rule requiring corroboration, even though he could not be convicted as an accessory after the fact. But we adopted our view solely on the basis that an accessory after the fact is an accomplice. *Sweatt* v. *State,* 251 Ark. 650, 473 S.W. 2d 913. The more generally accepted view is that an accessory after the fact is not an accomplice. 23 CJS 3, Criminal Law § 786 (1). It is clear that the decided weight of authority is that a receiver of stolen property, who did not aid, abet, assist or induce the theft, or join in a prearranged plan whereby the thief steals the property and the receiver buys it, is not an accomplice of the thief. 23 CJS 38, Criminal Law § 798 (19); Annot, 74 ALR 3d 560, 565, 567. Our view of the matter in other cases is that, under the statute on which appellant relies, an accomplice is one who could be convicted of the offense with which the defendant is charged. *Henderson* v. *State,* 255 Ark. 870, 503 S.W. 2d 889. See also, *Ferguson* v. *State,* 255 Ark. 917, 503 S.W. 2d 907. This view is in accord with the weight of authority.

At the time *Murphy* was decided, an accessory before the fact was defined as one who stands by, aids, abets or assists, or who, not being present, had advised and encouraged the perpetration of the crime. Ark. Stat. Ann. § 41-119 (Repl. 1964). The present criminal code treats the concept of accessories in an entirely different manner, which is consistent with the weight of authority. Under present law, an accessory before the fact is an accomplice. Ark. Stat. Ann. § 41-303 (Repl. 1977). One who was formerly an accessory after the fact is now guilty of a separate crime, i.e., hindering apprehension and prosecution. Cf. Ark. Stat. Ann. § 41-2805

(Repl. 1977) and Ark. Stat. Ann. § 41-120 (Repl. 1964). One who knowingly receives stolen property for the purpose of safeguarding or securing the proceeds of the offense or converting the proceeds into negotiable funds might now be guilty of aiding the consummation of an offense under Ark. Stat. Ann. § 41-2806 (Repl. 1977). Cf. *Hester* v. *State,* 149 Ark. 625, 233 S.W. 774. But he is not an accomplice in the sense of Ark. Stat. Ann. § 41-303 in that he aids the thief in planning or committing the crime. It also makes no difference that the receiver might be charged with another offense under the same statute as that defining the offense with which Tyler was charged. *Sweatt* v. *State,* supra. Our present law is compatible both with the view we have generally taken where other crimes are concerned and with the weight of authority. Thus, it appears that appellant was not entitled to the instruction as to corroboration of an accomplice.

We should also say that we do not agree with appellant that the trial judge had a duty to give an instruction on the necessity for corroboration of an accomplice without any request for it having been made, whatever duty he may have had to define the elements of the offense charged and the burden of the state to prove them beyond a reasonable doubt, in this case where the accused had only stand-by counsel. The court is not required to give a specific instruction applicable to the case, unless a motion has been made by a party. Ark. Stat. Ann. § 43-2134 (Repl. 1977). It is not required to give instructions when none are requested. *Roberts* v. *State,* 254 Ark. 39, 491 S.W. 2d 390. We have made an exception to this rule in a case where a jury imposed the death penalty without having been instructed that it (and only it) had the discretion to reduce the punishment to life imprisonment. *Webb* v. *State,* 154 Ark. 67, 242 S.W. 380.

We have held that one who fails to request an instruction defining what constitutes an accomplice is not entitled to complain of the court's failure to do so. *Carroll* v. *State,* 45 Ark. 539. See also, *Roberts* v. *State,* supra. Even in a jurisdiction where the court is required to instruct the jury on questions of law arising in the case which are necessary for the jury's information in giving their verdict, without any request by the defendant, it is not bound to instruct the jury as to the nature and effect to be given to the testimony of an accomplice on its

own initiative, because the matter is collateral to the main issue. *State* v. *Mahan,* 226 S.W. 2d 593 (Mo., 1950). Failure to instruct on subsidiary matters does not amount to a denial of due process. *Ballew* v. *Sarver,* 320 F.S. 1233 (E.D. Ark., 1970).

We deem the testimony, even though it is circumstantial, to present substantial evidence that appellant stole the automobile. Charles Dennis Reeves testified that on January 27, 1977, he stopped in Clinton, on his way to Searcy. He stopped the red Camaro he was driving at Lefler Chevrolet Company, where he and Tyler test drove the 1976 Monte Carlo. Tyler drove the car around in a circle at a Dairy Queen, while Reeves was out of the car. Reeves said that later the same night Tyler said that he had some keys for the Monte Carlo and talked about stealing it. Reeves said that upon the return trip he let Tyler out of the car in Clinton. Later, he said, he saw the Monte Carlo pass him when he was near Marshall, on his way to Harrison, and the driver, whom he believed to be Tyler, waved to him. Still later, he said, he heard Tyler discussing a price for a Monte Carlo with someone, and on another occasion, Tyler and another person spoke to him about the vehicle's having been kept at St. Joe and that it was to be stripped of parts and sold.

Dicky Lefler, part owner of Lefler Chevrolet Company, said that on January 27, 1977, two men arrived at his lot in a red car and test drove the 1976 Monte Carlo, which he found missing the next day. He said that he had last seen the car at 5:00 p.m., after the two men had returned it. L. D. Vincent, an employee of Lefler Chevrolet, also said that two men arrived at the place of business on that date, having come there in a red Camaro and that, after talking with Lefler, they drove off in a 1976 Monte Carlo. Neither Lefler nor Vincent could describe the two men. Coy White testified that the first time he saw the Monte Carlo it was stuck in the mud and Tyler asked him if he knew some way to get the car pulled out. He said that he did not see the car after Tom Wyatt pulled it out of the mud, until later, when he saw it in the woods in the National Park. It had then been stripped of its front end and doors and parts had been removed from it. White said that, at that time, Tyler gave him the engine and transmission in satisfaction of a debt Tyler owed him. Wyatt recalled pulling a car out of the mud in the presence of Tyler and White.

Wyatt did not recall who asked him to do so. He said about four people walked up to him and asked him to pull the vehicle out.

This evidence was certainly sufficient to support the verdict.

The judgment is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. Appellant and his employed counsel severed their relationship shortly before the case was scheduled for trial. When the case was called, appellant's counsel informed the court he had been discharged and was not ready for trial. The court determined appellant desired a continuance and the implication is that his attorney did not request one because he saw no reason for it. Whatever the reason, the court offered a one-day delay as there was another trial ready to commence at the time. Appellant rejected the offer as not giving sufficient time for preparation of his defense and proceeded to trial representing himself. One reason the court gave for rejecting the request for a continuance was it was part of a "ploy" by people in Searcy County to obtain a continuance. No other reasons were given in support of this statement which would indicate appellant was part of such scheme.

The former attorney was ordered to sit at the defense table with appellant for the purpose of assisting him "if so requested." The attorney was not requested to assist the appellant if he observed errors or the like. He sat there until the court was ready to give instructions to the jury at which time the discharged attorney was handed the court's instructions. No objection was made even though there was no instruction relating to an accomplice. The trial court had not at any time warned appellant of the dangers involved in going to trial without counsel. The record further reveals appellant had not been granted a previous continuance although the state had been granted one. The case had been pending less than 6 months.

The fact that appellant discharged his attorney on the

eve of trial does not waive the requirements of the Sixth Amendment that an accused has the right to the assistance of counsel. He was not even offered such assistance nor was his solvency questioned. This violates the rule in *Chandler* v. *Fretag*, 348 U.S. 3 (1954) and, specifically, *Tollett* v. *U.S.*, 444 F. 2d 622 (8 Cir. 1971). Such warning is required by *Adams* v. *U.S.*, 317 U.S. 269 (1942).

I also feel the instruction on accomplice should have been given on the volition of the court when an accused is not represented by counsel. Clearly, the evidence was sufficient to show Coy White was an accomplice. Therefore, I would reverse and remand.