SLIP OPINION

Cite as 2015 Ark. App. 321

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–11–415

| | |
|---|---|
| | **Opinion Delivered** May 13, 2015 |
| EDWARD ANTHONY LIGGINS<br>APPELLANT | APPEAL FROM THE CRAIGHEAD<br>COUNTY CIRCUIT COURT,<br>WESTERN DISTRICT |
| V. | [NO. CR–09–1147] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE CINDY THYER,<br>JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

A Craighead County jury found appellant Edward Anthony Liggins guilty of first-degree murder and first-degree battery. He was sentenced to forty years' imprisonment for first-degree murder; however, his sentence was enhanced by fifteen years and ten years, respectively, for employing a firearm and for committing the crime in the presence of a child.[1] The sentence plus the enhancements were to run consecutively, for an aggregate sentence of sixty-five years' imprisonment. He was sentenced to twenty years' imprisonment for first-degree battery. This sentence was to run concurrently to the sixty-five-year sentence.[2]

---

[1] Ark. Code Ann. § 16–90–120, and Ark. Code Ann. § 5–4–702 (Supp. 2013).

[2] His probation on an underlying offense was also revoked, and he was sentenced to thirty years' imprisonment to run concurrently to the above convictions. However, the revocation is not an issue in this appeal.

Liggins argues on appeal that the trial court violated his Sixth Amendment right to counsel of his choice. We affirm.[3]

Appellant's jury trial took place from August 2 to August 5, 2010. On August 3, 2010, the second day of jury trial, before the conclusion of jury selection, Miranda Esters[4] stated that appellant had an attorney and that they were attempting to "get the Public Defenders fired." The court responded, "[T]here is nothing in the court file where she [Teresa Bloodman] has entered her appearance, and I have not heard from her indicating that she intends to represent him, and we are well within the trial at this point." Appellant's trial counsel, Grant Deprow,[5] also informed the court that Bloodman "might be on her way up [there]." However, the court stated, "I've received nothing from her, the trial's been going on since as early as yesterday morning and I haven't seen her. So at this point, I don't feel like it's an issue that can be addressed at least without her being here." The court subsequently told appellant, "[T]his case will not be continued whether you have a different attorney or not." The court noted that they were in the process of choosing the jury. The court proceeded with jury selection and began with appellant's trial.

The court was notified of Bloodman's motion for entry of appearance after the court had recessed for lunch. Upon being questioned by the court, appellant stated that he did not

---

[3]This is the fourth time this case has been before us. In the last opinion, we relieved Liggins's former attorney and appointed the current attorney. *See Liggins v. State*, 2012 Ark. App. 555; *Liggins v. State*, 2014 Ark. App. 181; *Liggins v. State*, 2014 Ark. App. 671.

[4]Appellant has a child with Esters.

[5]Appellant was represented by two public defenders: Grant Deprow and Charlene Henry.

want to be represented by a public defender and that he wanted to change attorneys because he "need[ed] a paid attorney in a situation like this." Appellant could not provide the court with any specific reason for wanting Bloodman to represent him. However, he stated that his current attorneys refused to file motions requesting a change of venue and a speedy trial; that they failed to subpoena certain witnesses for his defense; that they would not show him the witness list; and that they would not provide him with a second set of discovery when he lost or misplaced the first set provided. Deprow responded to appellant's claims, stating that one witness was only going to be a rebuttal witness and that he was no longer needed because the testimony he was going to rebut was not going to be presented; that the other person had an extensive criminal history and would do more harm than good to appellant's defense; and that a third individual had made himself unavailable, and he also had an extensive criminal history. Appellant told the court that he did not know why someone would wait until the current week to contact Bloodman about representing him.

The court contacted Bloodman by phone and held a conference call on the record. Bloodman asked the court for permission to enter her appearance "conditioned upon the Court granting a continuance." She stated that she "could not effectively represent a client if the Court determine[d] to substitute counsel today." She informed the court that appellant's family had "taken the first steps towards retaining [her that] morning." She said that she had not had any contact with appellant or his family prior to that time. Bloodman asked the court for permission to enter an appearance conditioned on a continuance. The court denied the request, stating,

> [T]he right to counsel of one's choice is not absolute and may not be used to frustrate the inherent power of the Court to command an orderly efficient and effective administration of justice. Based upon the fact that we're at midst trial at this point starting yesterday with jury selection which we completed this morning, and the fact the we're already into witness testimony, the Court is going to deny the request for a continuance in this case.

The court informed Bloodman that a continuance at that stage of the proceeding would require a mistrial, which the court found to be an unreasonable request. The court explained to appellant that it considered his request for change of counsel to be untimely.

The court revisited appellant's request for change of counsel the following day. It decided to put additional evidence on the record with regard to the request. The court called Jeremy Sparks, the assistant jail administrator at the Craighead County Detention Center. Sparks stated that appellant had been placed on lock-down a total of four times since his incarceration.[6] Sparks testified that an inmate on lock-down "is allowed to make telephone calls to attorneys during [that time]." According to Sparks, appellant would not have been denied any access to an attorney during lock-down. Following the additional evidence, the court stated,

> [T]he Court's required to consider the reasons that Mr. Liggins may want to change attorneys and certainly he expressed yesterday, one, on the issue of speedy trial which actually Mr. Liggins changing attorneys in this case would prolong your period of time for trial. But also he had made those concerns about Discovery, and so if you are inclined not to address that any further, I understand that. The Court has considered that, and this is essentially just a supplement to yesterday's ruling. The Court also feels that the issue of change of venue has been thoroughly addressed as far as Mr. Liggins's concerns of publicity and the jury selection process and how that was conducted, and the Court feels confident that the issue has been dealt with by the questions posed by

---

[6]November 13, 2009, for twenty days; March 3, 2010, for ten days; July 16, 2010, for fifteen days; August 2, 2010, for ten days.

SLIP OPINION

you all, and excluding jurors who may have been improperly influenced by publicity. The Court also wanted to just add that testimony this morning of Mr. Sparks because again I had a certain impression about issues that occurred in lock-down and wanted to be sure that was clear for the record. But one of the factors that the Court has to consider is whether Mr. Liggins has acted diligently in seeking change of counsel, and I did not want there to be any impression left based on Mr. Liggins's comments yesterday that he may not have been able to contact an attorney for the purpose of changing an attorney.

. . . .

So, the Court does believe that Mr. Liggins has not been diligent in seeking change and counsel despite the opportunity to do so. So I just wanted to simply add some additional evidence on that issue. The Court does stand by the ruling yesterday concerning Mr. Liggins's request to change attorneys at this point since Ms. Bloodman indicated yesterday that she was not ready to step in and assume representation of Mr. Liggins this week, but for her to assume representation she was asking for the Court to declare a mistrial and a continuance which the Court is not inclined to do at this point.

Appellant's jury trial proceeded, and he was subsequently convicted of the charges against him. Appellant filed a motion for a new trial, which was denied. He filed a timely notice of appeal. This appeal followed.

Although constitutionally guaranteed, the right to counsel of one's choosing is not absolute, and the circuit court retains broad discretion to grant or deny a continuance for purposes of obtaining new counsel.[7] Broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.[8] Even

---

[7]*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (noting that trial courts have wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar) (internal citations omitted).

[8]*Ungar v. Sarafite*, 376 U.S. 575 (1964); *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983).

SLIP OPINION

where Sixth Amendment rights are at stake, a . . . court legitimately can balance the right to counsel of choice against the demands of its calendar and make scheduling and other decisions that effectively exclude chosen counsel.[9] The key, however, is whether the court has indeed balanced those interests, or instead has acted arbitrarily.[10]

Our supreme court has recognized that, once competent counsel has been obtained, any request for a change in counsel must be balanced against the public's interest in the prompt dispensation of justice.[11] The right to counsel may not be manipulated or subverted to obstruct the orderly procedures of the court, or to interfere with the fair, efficient, and effective administration of justice, particularly when a change of counsel is made on the eve of trial, primarily for the purpose of delay, and without making any effort to obtain substitute counsel.[12] In each situation the court must look at the particular circumstances of the case at bar, and the issue must be decided on a case-by-case basis.[13] Factors to be considered by the circuit court include whether there was adequate opportunity for the defendant to employ counsel; whether other continuances have been requested and granted; the length of the requested delay; whether the requested delay is for legitimate reasons; whether the motion for a continuance was timely filed; whether the defendant contributed to the circumstances giving

---

[9]*Gonzalez-Lopez, supra.*

[10]*United States v. Sellers*, 645 F.3d 830, 835–36 (7th Cir. 2011).

[11]*Leggins v. State*, 271 Ark. 616, 618, 609 S.W.2d 76, 78 (1980).

[12]*See Tyler v. State*, 265 Ark. 822, 828, 581 S.W.2d 328, 331 (1979).

[13]*Thorne v. State*, 269 Ark. 556, 560–61, 601 S.W.2d 886, 889 (1980).

rise to the request for a continuance; whether the reason for the discharge of existing counsel was solely for the purpose of obtaining a continuance; and whether the request was consistent with the fair, efficient and effective administration of justice.[14] None of these factors is a prerequisite to the granting of a continuance, but these and other factors are the legitimate subject of the court's attention when a continuance is requested.[15] Additionally, a trial court may consider how last-minute continuances tread upon the rights of parties and the demands of a court's calendar.[16] However, legitimate considerations must be balanced against the reasons in support of the motion for a continuance to accommodate new counsel.[17]

Appellant argues that the trial court violated his Sixth Amendment right to choice of counsel by making a premature decision and failing to properly balance the request for choice of counsel against other relevant factors. He contends that the facts of his case are similar to the facts in *Arroyo v. State*.[18] In *Arroyo*, appellant sought a continuance to substitute counsel the day before his jury trial was set to begin due to a possible conflict.[19] The substitute counsel was present and offered to explain to the court why a continuance would be in Arroyo's best interest. The court declined to hear from the substitute attorney and

---

[14]*Id.*

[15]*Id.*

[16]*Sellers, supra.*

[17]*Id.*

[18]2013 Ark. 244, 428 S.W.3d 464.

[19]Arroyo and his wife were both facing drug charges and were being represented by the same attorney.

subsequently denied the request. Our supreme court reversed and remanded this case, holding that Arroyo's motion for continuance to substitute new counsel was wrongly denied because the trial court failed to consider Arroyo's interests when deciding the motion.

The facts of this case are distinguishable from the facts in *Arroyo*. Here, the trial court was presented with a motion for entry of appearance after the jury had been empaneled and testimony had already begun in appellant's trial. The court asked appellant why he wanted to substitute counsel, and appellant responded that due to the serious nature of the charges against him, he needed a "paid" attorney. Appellant expressed his concerns about issues he felt his current attorneys should have addressed but had not done so. The court then allowed appellant's current attorneys to respond. Appellant could offer no explanation as to why new counsel had not been sought earlier. The court then contacted Bloodman and learned that she had been retained that morning by appellant's family. She told the trial court that she needed a continuance and that she was unprepared to represent appellant that week. The court told Bloodman that in order to grant the request, a mistrial would have to be declared. The court subsequently found the request unreasonable and denied it. However, the next day, the court reopened the issue for additional evidence. Following the additional evidence, the court stood by its prior decision and found that appellant had not been diligent in seeking to substitute new counsel. Based on this evidence, we cannot say that the court arbitrarily denied appellant's motion for a continuance. Therefore, we affirm.

Affirmed.

VAUGHT and HOOFMAN, JJ., agree.

*Teresa Bloodman*, for appellant.
*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.