Harold BROOKS *v.* STATE of Arkansas

CA CR 91-21                                   819 S.W.2d 288

Court of Appeals of Arkansas
Division II
Opinion delivered November 6, 1991

*Bill E. Ross*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

GEORGE CRACRAFT, Chief Judge. Harold Brooks appeals from an order revoking his probation and sentencing him to a term in the Arkansas Department of Correction. He contends that he was denied his constitutional right to counsel. We agree, and reverse and remand.

In 1987, appellant pled guilty to two counts of battery in the first degree and was placed on probation for five years. In March 1990, the State filed a petition to revoke appellant's probation, alleging that appellant had violated the terms and conditions of

his probation in that he had violated the laws of this state.

The record reflects that on September 24, 1990, a hearing on the petition was held by the trial court. Before the hearing began, the following took place:

> THE COURT: · Mr. Brooks, when we were here the first day of the term of court, you had just said you didn't want the public defender to represent you, and this petition for revocation was set to be heard, and I continued it until today and told you to get a lawyer if you didn't want the public defender's office to represent you; and you indicated you didn't. Have you gotten a lawyer?
>
> [APPELLANT]: No, sir.
>
> THE COURT: Are you planning on representing yourself?
>
> [APPELLANT]: *I ain't qualified to represent myself. I need an attorney.* As you seen when I first come up here, she stood up there and lied. She wasn't my lawyer, and she stood up there and stated she gave me papers —
>
> . . . .
>
> [APPELLANT]: I'm telling you about the lawyer's case. I don't feel she represents me in my best behalf, so this is why I dismissed her from the case. . . .

Thereafter, there was some discussion as to the events leading up to appellant's decision not to be represented by the public defender, and whether appellant had been notified that the petition would be heard on that date, September 24, 1990. The court then stated:

> THE COURT: All right. If he was advised of that, [that the petition to revoke would be heard on September 24, 1990] and I have given him two months to get a lawyer — It is in the record that I continued the thing until today to get counsel —
>
> [APPELLANT]: (Interposing) I ain't got none.
>
> THE COURT: That's your fault. I told you you would either have to represent yourself or get your own lawyer

because you had fired Ms. Bracy, and that was the end of that. We are not going to appoint every lawyer in the United States for you.

[APPELLANT]: I don't want her.

Appellant then protested the holding of the hearing without having his witnesses present. He explained to the court that witnesses who he had subpoenaed to appear at the hearing when it was first scheduled were not present. He indicated that the testimony of one particular witness who was not present was critical to his case. The court advised appellant that this was also his fault, and that the hearing would proceed as scheduled. The court indicated that the public defender would sit at appellant's table if appellant so requested, but appellant reiterated that he did not want the assigned public defender to assist him.

The court proceeded to hear testimony and appellant appeared *pro se*. At the conclusion of the hearing, the trial court revoked appellant's probation and sentenced him to a term in the Arkansas Department of Correction. The sole issue raised on appeal is whether appellant knowingly and intelligently waived his right to counsel. We conclude that, from the record before us, he did not.

The Constitutions of both the United States and the State of Arkansas guarantee an accused the right to have the assistance of counsel for his defense, and it is generally recognized that no sentence involving loss of liberty can be imposed where there has been a denial of counsel. *Philyaw* v. *State*, 288 Ark. 237, 704 S.W.2d 608 (1986). This right extends to revocation hearings if sentencing is to follow revocation. *Furr* v. *State*, 285 Ark. 45, 685 S.W.2d 149 (1985); *see* Ark. Code Ann. § 5-4-310(b)(4) (1987). Although the right to counsel is a personal right and an accused may knowingly and intelligently waive counsel at various stages of the proceedings, every reasonable presumption must be indulged against the waiver of this fundamental right. *Philyaw* v. *State, supra.*

There are certain requirements that must be met before a trial court can find that an accused has knowingly and intelligently waived counsel and allow the accused to proceed *pro se*:

> A defendant in a criminal case may invoke the right to defend *pro se* provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly disposition of the issues.

*Philyaw*, 288 at 244-45, 704 S.W.2d at 611. The accused must have full knowledge and adequate warning concerning his rights and a clear intent to relinquish them before waiver can be found. *Barnes* v. *State*, 258 Ark. 565, 528 S.W.2d 370 (1975). Waiver of the right to counsel presupposes that the court has discharged its duty of advising appellant of his right to counsel, questioning him as to his ability to hire independent counsel, and explaining the desirability of having assistance of counsel during the trial and the problems attending one representing himself. This last requirement has been held especially important since a party appearing *pro se* is responsible for any mistakes he makes in the conduct of his trial and he receives no special consideration on appeal. *Philyaw* v. *State, supra.* The burden is on the State to show that an accused voluntarily and intelligently waived his right to counsel. *Scott* v. *State*, 298 Ark. 214, 766 S.W.2d 428 (1989). Presuming waiver from a silent record is impermissible. *Id.*

■ Here, there is no indication in the record presented to us of any request by appellant that he be allowed to represent himself. To the contrary, appellant requested that he have counsel and averred that he was not qualified to defend himself. Nor does the record show that appellant was informed of his right to counsel, the consequences of failure to obtain counsel, or the alternatives to *pro se* representation if he was unable to retain independent counsel, or that any inquiry was made as to his financial ability to employ counsel. We do not have a transcript of the proceedings at the pretrial hearing at which appellant's first request to obtain different counsel was made. What reasons appellant gave for wanting substitute counsel, what the trial judge told him concerning his right to counsel, or whether the judge advised him of the pitfalls of appearing *pro se* was not preserved for us. We do not know whether the court made an inquiry as to appellant's financial ability to have counsel or whether appellant was informed that the court would appoint

counsel without expense to him. The record we do have is completely silent as to waiver of counsel. Therefore, we cannot conclude that appellant knowingly and intelligently waived his right to counsel. *See Scott* v. *State, supra.*

The State contends, alternatively, that appellant "forfeited" his right to counsel because his conduct at trial was intended to manipulate and obstruct the fair and orderly disposition of justice. While we agree that the constitutional right to counsel is a shield, not a sword, and that a defendant may not manipulate this right for the purpose of delaying the trial or playing "cat-and-mouse" with the court, *see Burns* v. *State*, 300 Ark. 469, 780 S.W.2d 23 (1989); *Tyler* v. *State*, 265 Ark. 228, 581 S.W.2d 328 (1979), we cannot agree, from the record before us, that that is what occurred in this case.

The State argues that the case at bar is controlled by *Tyler* v. *State, supra*; however, we find the two cases to be clearly distinguishable. In *Tyler*, counsel for the appellant announced to the court on the morning of trial that the defense was not ready and that appellant had discharged him. The attorney stated, however, that it was his duty to disclose that "the sole and only reason he was discharged was 'because the [appellant] wants a continuance.'" *Tyler*, 265 Ark. at 825, 581 S.W.2d at 329. The appellant did not deny his counsel's statement, and stated his reasoning as follows:

> This is a legitimate thing, really because I didn't get my witnesses together. I had full intentions of waiting until after the first of the year to try my case on account of the election and everything. I felt if I waited until after the first of the year, things would be better organized and I would all round get a better trial and everything. I would say that finances and everything to do with lawyers would be reasonable cause for postponement.

*Tyler*, 265 Ark. at 86, 581 S.W.2d at 330.

The supreme court, in determining that the appellant had waived his right to counsel, considered the following: (1) that the appellant had ample time to employ, and did employ, counsel but discharged him on the eve of the trial; (2) that the principal reason for the discharge was to postpone the trial; (3) that the

appellant had taken no steps to secure another attorney; and (4) that there was no showing that appellant had been unable to obtain counsel or that he had requested that appointment of counsel. Here, appellant had not discharged his counsel on the eve of trial, but several weeks in advance of trial. There was no indication that he did so for the sole purpose of obtaining a subsequent continuance. At the hearing, appellant requested the appointment of counsel and made a motion for a continuance in order to obtain the presence of witnesses. Therefore, on the facts of this case, we cannot conclude that the record is sufficient to support a finding of intentional manipulation of the judicial process amounting to a "forfeiture" of the right to counsel.

Reversed and remanded.

DANIELSON and MAYFIELD, JJ., agree.