Vaughn Dale KIRKENDOLL *v.* STATE of Arkansas

CA CR 96-1040                                          945 S.W.2d 400

Court of Appeals of Arkansas
Division I
Opinion delivered May 28, 1997

[P etition for rehearing denied July 2, 1997.]

*Montgomery, Adams & Wyatt, PLC,* by: *Dale E. Adams,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Gil Dudley,* Asst. Att'y Gen., for appellee.

MARGARET MEADS, Judge. Vaughn Dale Kirkendoll was convicted by a jury of stalking in the second degree. He was sentenced by the court to three years' incarceration in the Arkansas Department of Correction. Appellant argues on appeal that he did not intelligently and voluntarily waive his right to counsel and was therefore deprived of counsel, and that the trial court imposed an illegal sentence. We disagree and affirm.

The charge of stalking in the second degree was brought against appellant in response to his threats and actions toward his ex-wife, Kathi Kirkendoll. A person commits the offense of stalking in the second degree, a Class C felony, if he "purposely engages in a course of conduct that harasses another person and makes a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury." Ark. Code Ann. § 5-71-229(b)(1) (Supp. 1995). "Course of conduct" is defined as "a pattern of conduct composed of two (2) or more acts separated by at least thirty-six (36) hours, but occurring within one (1) year." Ark. Code Ann. § 5-71-229(d)(1)(A) (Supp. 1995). The term "harasses" employed in § 5-71-229(b)(1) means acts of harassment as defined in Ark. Code Ann. § 5-71-208(a) (Supp. 1995). Those parts of § 5-71-208 relevant here define harassment as follows:

> (a) A person commits the offense of harassment if, with purpose to harass, annoy, or alarm another person, without good cause, he:

* * *

(3) Follows a person in or about a public place; or

* * *

(5) Engages in conduct or repeatedly commits acts that alarm or seriously annoy another person and that serve no legitimate purpose; or

(6) Places the person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence, other than the residence of the defendant, for no purpose other than to harass, alarm, or annoy.

Ark. Code Ann. § 5-71-208(a) (Supp. 1995). *See also Wesson v. State*, 320 Ark. 380, 896 S.W.2d 874 (1995).

After the parties separated in January 1995, Ms. Kirkendoll obtained a restraining order against her husband. However, he continually violated this order by following her and going to her home and to her place of employment. In April 1995, appellant told her that it did not matter where she hid from him, that he could just come into church on a Sunday morning and blow her away. The next day, appellant appeared at the church where Ms. Kirkendoll and their daughters were attending a spaghetti supper. She notified the police, but appellant left before any police officers arrived.

Ms. Kirkendoll testified that on July 22, she and her daughters went to the movie theater, and appellant entered the theater and sat down behind them. He did not speak to Ms. Kirkendoll, but he spoke to their older daughter. Ms. Kirkendoll stated that his conduct scared her because she did not know what he planned to do. She saw him again six days later at McDonald's, when he called their children outside to talk to them. She said that she was afraid he would try to take the children.

Ms. Kirkendoll further testified that on August 1, appellant followed her to a funeral, and on August 7, she found a note on her car from appellant stating that he was not going to be a weekend dad. On August 13, appellant called Ms. Kirkendoll and told her that she had taken the girls away from him and that he would "get her for that." On August 14, Robert Williams, a deacon in

her church, told her that appellant had said that if he killed her [Ms. Kirkendoll] that it would be "okay in the eyes of God." At that point, Ms. Kirkendoll decided to press charges against appellant.

At appellant's first appearance on August 31, 1995, the following colloquy ensued:

> TRIAL COURT: All right, you have the right to remain silent. Anything you say can and will probably [be] used against you in court. You have a right to have an attorney present with you during any questioning. If you can't afford an attorney, you need to fill out an affidavit and one will be appointed to represent you if you qualify at no charge to you. You have a right to answer any questions if you want to but at any time you decide you don't want to answer any more questions, all you have to do is say, I don't want to answer any more questions or I would like to have my attorney present and the questioning will stop. Do you understand?
>
> KIRKENDOLL: (Nodding head up and down.)
>
> * * *
>
> TRIAL COURT: We are going to set your arraignment on the 14th. If you are released on bond, you need to be here that day with your attorney. If you can't afford an attorney, you need to fill out the affidavit as I said and someone will be appointed to represent you at your arraignment, or earlier if it's necessary.

At appellant's arraignment on September 14, 1995, the court again questioned appellant about whether he had retained an attorney:

> TRIAL COURT: Do you have an attorney?
>
> KIRKENDOLL: No, sir.
>
> TRIAL COURT: Are you going to hire an attorney?
>
> KIRKENDOLL: No, sir.
>
> TRIAL COURT: Have you filed an affidavit for a court-appointed attorney?
>
> KIRKENDOLL: No, sir.
>
> TRIAL COURT: Are you going to proceed pro se, which means you are going to be your own lawyer?

KIRKENDOLL: Yes, sir.

* * *

TRIAL COURT: You are here today for an arraignment. This is the time for you to enter your plea. Since you are proceeding without counsel, I'm going to advise you of your rights. You have the right to remain silent throughout these proceedings and even in the trial. You have the right to have an attorney present if you want to have one. If you choose not to, that's your choosing. You have a right to cross-examine any of the witnesses that the State would put on the stand against you. You have the right to call any witnesses on your behalf if you wish. And, if you can't get those witnesses here voluntarily, they could be subpoenaed at the expense of the State. Do you understand that?

KIRKENDOLL: Yes, sir.

TRIAL COURT: You have the right to an appeal. If the decision of the Court or the jury is adverse to what you'd like for it to be, you have the right to a jury trial which will be a speedy trial. The jury would have [to] vote unanimously to find you guilty. Do you understand all those rights?

KIRKENDOLL: Yes.

TRIAL COURT: You are charged with stalking in the second degree. It is alleged that on the 6th day of April, 1995, through the 14th day of August, 1995, you purposely engaged in a course of conduct that harassed another person and made a terroristic threat with the intent of placing that person in imminent fear of death or serious bodily injury of her immediate family. This is a Class C felony. How do you plead?

KIRKENDOLL: Not guilty.

* * *

TRIAL COURT: I am going to require the State to provide discovery by November the 1st and you to provide discovery by November the 27th.

KIRKENDOLL: What do you mean by discovery?

TRIAL COURT: Discovery is where you will give to them a list of all the witnesses that you intend to call and any defenses that you may have. They will be required to do the same to you, okay? They will also be required to give you a recommendation if they intend to make one, what could be a plea agreement. If

you want to accept that, then you can do that on the date that's set for the intent date which is November the 27th. You need to be here on each of these days that are set — set out on this order. Read this order very carefully because it tells you what you're supposed to do.

The issue of appellant's lack of counsel was addressed a third time at the pretrial hearing on January 8, 1996:

TRIAL COURT: Mr. Kirkendoll, your case is set for trial in two weeks, and you —

CASE COORDINATOR: It's January 23rd.

TRIAL COURT: January 23rd. And you've elected up to this point to have no attorney?

KIRKENDOLL: Yes, sir.

TRIAL COURT: Is that still the way you want to proceed?

KIRKENDOLL: Yes, sir.

TRIAL COURT: All right.

DEPUTY PROSECUTOR: Your Honor, would the Court like to inquire of Mr. Kirkendoll's ability to defend himself?

TRIAL COURT: Not at this point. I'll do it when we get closer to trial. Have you received discovery from the State?

KIRKENDOLL: No, sir.

TRIAL COURT: Mr. James, would you make that available to him today?

DEPUTY PROSECUTOR: I did, but he just didn't want to take it the last court date.

KIRKENDOLL: What discovery was that, sir?

TRIAL COURT: The information that they have regarding the case, who their witnesses will be, what they intend to prove, et cetera. Have you —

KIRKENDOLL: Where do I get this information?

TRIAL COURT: From Mr. James.

DEPUTY PROSECUTOR: I handed it to him in court last time and he handed it back to me and said he didn't want it.

On January 25, 1996, the day of appellant's trial, the following exchange occurred prior to jury selection:

TRIAL COURT: I know that you have indicated that you want to go ahead and proceed without an attorney, but before I do that I want to make sure that you understand your rights.

KIRKENDOLL: Yes, sir.

TRIAL COURT: You know that you have the right to have an attorney representing you today?

KIRKENDOLL: Yes, sir.

TRIAL COURT: All right. Do you feel like you're competent to represent yourself?

KIRKENDOLL: I feel like I'm a competent person, sir. I don't know the law as what might forfeit in the courtroom.

TRIAL COURT: All right. What kind of education do you have?

KIRKENDOLL: I have a high school education.

TRIAL COURT: Have you participated in the criminal justice system before?

KIRKENDOLL: In no way.

TRIAL COURT: You ever watched a trial?

KIRKENDOLL: I've watched more today than I ever have.

TRIAL COURT: Have you read anything about the law in this case or —

KIRKENDOLL: No.

TRIAL COURT: Know anything about a trial other than what you've seen on television and what you've seen here today?

KIRKENDOLL: Not much, no.

TRIAL COURT: Well, why have you decided to go forward without an attorney?

KIRKENDOLL: I'm not guilty.

TRIAL COURT: All right. There are some things I need to tell you before we start — and I'm not doing this to frighten you or scare you or make you worry, but I want to make sure that you understand what you are looking at. This is a jury trial.

KIRKENDOLL: Yes, sir.

TRIAL COURT: You've asked for a jury trial.

KIRKENDOLL: Yes, sir.

TRIAL COURT: And there are — there are a lot of things that go on before a jury trial can begin. First thing will be the jury selection.

KIRKENDOLL: Yes, sir.

TRIAL COURT: I don't know, were you here the other day during jury selection?

KIRKENDOLL: No, sir.

TRIAL COURT: All right. The offense —

KIRKENDOLL: If it's all the same with you, sir, I would just as soon they picked the jury.

TRIAL COURT: They?

KIRKENDOLL: Yeah.

TRIAL COURT: Who?

KIRKENDOLL: I understand, you know, the two sides get together and pick the jury. I'll just let the prosecution pick the jury.

TRIAL COURT: Okay. Let me go ahead and explain these things to you. The offense that you're charged with is a felony. It is a Class C felony and I believe the range of punishment is from three to ten years and a fine of up to $10,000 dollars. Do you understand that?

KIRKENDOLL: Yeah. I didn't know what the penalty was, but —

TRIAL COURT: Okay. You understand that most people who go through this kind of trial have an attorney to represent them —

KIRKENDOLL: Uh-huh.

TRIAL COURT: — because they need help. To you, having an attorney would be like me having a mechanic. If I tore into the engine in my car, I can guarantee you I wouldn't go very far after I went down the road.

KIRKENDOLL: Me either, and I may not get very far.

TRIAL COURT: All right. A competent lawyer is knowledgeable in the law, knowledgeable in the procedures, knowledgeable in the rules of evidence, and in the technical issues that would come up before the Court in this case. Even if you've seen — seen some trials on television, even if you have some type of edu-

cation in the law, you may not know all the technicalities that are involved. Are you sure you want to represent yourself?

KIRKENDOLL: Your Honor, I gave 17 years to this woman, and if she wants to take three more from me, that's fine, or even seven more, ten more, whatever.

TRIAL COURT: There are some other things I need to tell you, then. The Supreme Court has ruled that there — that you have the right to go into trial without a lawyer if that's what you want to do. Okay. You have the constitutional right to a lawyer and I've explained that to you I think each time you've been here. Maybe not the last time, but I've tried to tell you that —

KIRKENDOLL: Yes, sir.

TRIAL COURT: — that you have a right to a lawyer. Now, when we're out there, you can't be relying on me to tell you what the law is. The Supreme Court says I can't do that. I'm a referee. I can't be the coach. You understand?

KIRKENDOLL: Yeah.

TRIAL COURT: You're going to be held to about the same responsibility that you would if [you] had a lawyer there. Okay. If you get frustrated and upset, I may exercise my discretion and take a break, but I can't coach you. I can't tell you what you need to do. If, for any reason, I find that you conduct yourself in a manner that is not civil or one that I find to be contemptuous, you may find yourself in jail for that. Do you understand that you will be held to the same standard as if Mr. James or Mr. Stephens went out there and said something inappropriate to the jury, or to a witness, or to me? They might find themselves in the jail as well. You understand that?

KIRKENDOLL: Yes, sir.

TRIAL COURT: All right. I'm going to allow you to proceed; however, I am going to ask Mr. Stephens, who is the public defender here, to sit with you at the table. If you have any questions about what's going on, you can ask him. He won't be standing up and making objections. He won't be conducting the voir dire. He won't be doing the questioning. You will be doing that by yourself.

Appellant allowed the State to select the jurors. During the trial, appellant's ex-wife was allowed to testify regarding incidents

predating the parties' divorce, which were irrelevant to the current stalking charge; however, appellant did not object. Appellant allowed his minister to testify concerning matters about which appellant had spoken with him in confidence. When the State rested, the public defender, who the judge had asked to sit at the table with appellant, instructed him to make a motion for a directed verdict, which was denied.

■ ■ The Sixth and Fourteenth Amendments to the United States Constitution guarantee that any person brought to trial in any state or federal court must be afforded the fundamental right to assistance of counsel before that person can be validly convicted and punished by imprisonment. *Oliver v. State*, 323 Ark. 743, 918 S.W.2d 690 (1996). An accused person has a constitutional right to represent himself and make a voluntary, knowing, and intelligent waiver of his constitutional right to the assistance of counsel in his defense; however, every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Id.* Certain requirements must be met before a trial court can find that an accused has knowingly and intelligently waived counsel and allow the accused to proceed pro se:

> A defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted; (2) there has been a knowing and intelligent waiver of the right to counsel; and (3) the defendant has not engaged in conduct which would prevent the fair and orderly disposition of the issues.

*Brooks v. State*, 36 Ark. App. 40, 44, 819 S.W.2d 288, 290 (1991) (citation omitted).

■ The accused must have full knowledge and adequate warning concerning his rights and a clear intent to relinquish them before waiver can be found. *Id.* Waiver of the right to counsel presupposes that the court has discharged its duty of advising appellant of his right to counsel, questioning him as to his ability to hire independent counsel, and explaining the desirability of having assistance of counsel during the trial and the problems attending one representing himself, since a party appearing pro se is responsible for any mistakes he makes in the conduct of his trial

and he receives no special consideration on appeal. *Id.* It is the State's burden to show that an accused has voluntarily and intelligently waived his right to counsel. *Oliver, supra; Brooks, supra.*

In the present case, the trial judge questioned appellant at each stage of the proceeding with regard to his desire to proceed pro se. The recited portions of the record indicate that the trial judge sufficiently questioned appellant about his desire to appear pro se and the consequences of defending himself. In fact, we believe that this trial judge went to greater lengths than were necessary to ensure that appellant had every possible opportunity to request the assistance of counsel.

The record does not indicate that appellant ever requested and was denied counsel. Quite to the contrary, the record is replete with dialogue between the trial judge and appellant in which the judge inquired as to appellant's intent to employ counsel. Each time, appellant unequivocally stated that he would represent himself. Appellant never apprised the court that he was financially unable to hire an attorney; in fact, after being instructed that if he could not afford an attorney he could complete an affidavit and one would be appointed, appellant told the court that he would not complete the affidavit and that he intended to represent himself. From our review of the record, we determine that appellant knowingly and intelligently waived his right to counsel; therefore, his first argument must fail.

For his second point on appeal, appellant argues that his sentence was unauthorized by statute and therefore illegal. Appellant's point is without merit. He was convicted of stalking in the second degree, a Class C felony, which is punishable by a sentence of not less than three years nor more than ten years. *See* Ark. Code Ann. §§ 5-71-229(b)(3) (Supp. 1995) and 5-4-401(a)(4) (Repl. 1993). Appellant was sentenced to three years in the Department of Correction, which is a proper sentence under the statutes.

Affirmed.

STROUD and NEAL, JJ., agree.