**UNITED STATES of America,**
**Appellee,**

v.

**Jack WHITE, Appellant.**

**No. 75–1689.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1975.

Decided Feb. 23, 1976.

William G. Wright, Hardin, Jesson & Dawson, Fort Smith, Ark., for appellant.

Robert E. Johnson, U. S. Atty., and James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., for appellee.

Before LAY, BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Jack White appeals his conviction of willfully removing certain boundary-marking items[1] used by the United States Forest Service in a survey of government lands in violation of 18 U.S.C. § 1858. Violation of this statute is a petty offense. Maximum punishment is a $250 fine, or imprisonment for not more than six months, or both. Upon finding the appellant guilty, the district judge imposed a $50 fine and 90 days imprisonment, suspending execution of the prison term and placing the defendant on probation without supervision for a period of one year.

Appellant-White contends that the trial court erred by requiring him to stand trial without the assistance of counsel and that the prosecution presented insufficient evidence to justify a finding of guilt. We have carefully reviewed the record and conclude that the evidence supports the conviction but that the sentence must be modified by striking the suspended 90-day prison term.

I. *The Factual Background.*

White and his privately retained counsel appeared before the court for arraignment on July 7, 1975. At that time, on the advice of his attorney, James Melvin Dunn of Fort Smith, Arkansas, White waived arraignment and

---

1. Removing of landmarks is an offense of ancient origin. *See Prov.* 22:28, 23:10; *Deut.* 19:14. Before modern surveying and mapping techniques made them less crucial, removing landmarks was seriously regarded. *See Deut.* 27:17 (" 'Cursed be he who removes his neighbors landmark.' And all the people shall say 'Amen.' "); *see also Job* 24:2.

entered his plea of not guilty. Appellant then requested a jury trial. After extended discussion, the district court (Hon. Paul X Williams) denied the motion. With the agreement of counsel for the government and the appellant, the court then set the case for trial one week later, July 15, 1975, at 9:00 a. m.

When the case was called on July 15, the court said that it had received a letter, dated July 11th, from Mr. Dunn, appellant's retained counsel, stating that " * * * Mr. White will represent himself in this matter."[2] The court then advised Mr. White of his rights and stated that if he desired counsel, he would be given an opportunity to retain an attorney. White responded, "I prefer to have counsel."

White explained to the court that since discharging Mr. Dunn, he had attempted to retain other counsel but that they had all declined to accept his case because of lack of sufficient time to prepare prior to the July 15 trial date. White said he needed "a little more time to prepare * * *", and upon further inquiry said that he needed at least 30 days. The judge responded that in 30 days he would be out of town and that problems would arise under the Speedy Trial Act. After explaining to Mr. White the additional costs that would accrue should the case be postponed, the court asked if a two-week delay would be adequate. Mr. White responded, "I do not know if I can be ready in two weeks or not."

The court then said that Mr. White would be deemed to have moved for a continuance and the motion would be denied. The trial judge directed the Government to present its case and said that after the Government had put in its evidence, he would continue the trial to enable Mr. White to obtain an attorney and present his defense. Mr. White neither expressly agreed nor objected to this procedure.

The Government then presented its case through two witnesses. Arnold Howard, the county sheriff, testified that on April 30, 1975, White came into his office with a number of survey markers (introduced as exhibits at the trial) and gave them to the sheriff telling him, "to do whatever I wanted to do with them." On cross-examination by White, the sheriff admitted that White had said that "he found them on his property and he definitely did not want them on his property."

The prosecution also called Albert Zornes, a certified land surveyor for the United States Forestry Service. He testified that he had informed White that he would be running a survey line adjacent to White's property. Zornes testified that in running a survey on land adjacent to that owned by White, boundary tags similar to those introduced as exhibits had been placed on the survey line as well as a line survey monument reading, "Please do not disturb." He also said that he had laid a corner marker, set in concrete. The record shows that White had delivered to the sheriff a cornerstone with concrete attached to it.

White conducted a vigorous examination of this witness primarily directed to whether or not the survey extended onto property which did not belong to the Forest Service. The court also conducted some inquiry establishing that this witness had no personal knowledge of whether White had removed survey markers. At the close of the Government's case, the court inquired whether White wished a continuance to another date, since he had no witnesses present. White responded, "I suppose we would have to." The court thereupon continued the case for one week.

The case was reconvened on July 22, 1975. The court addressing White said:

---

2. The text of the letter reads in full as follows:
 This letter is to inform you that I no longer represent Jack White, whose trial is scheduled for Tuesday, July 15. As I under-

stand it, Mr. White will represent himself in this matter.
 With kindest personal regards, I remain
 * * *.

[M]y notes show the sheriff of Scott County did testify and Mr. Zornes at which time I granted a continuance to let you acquire counsel if you cared to and to produce evidence in your behalf today. Do you have any evidence today?

White, again appearing without counsel, responded negatively and requested that the case be dismissed for lack of evidence. The court overruled the motion and made a finding of guilt. White immediately stated his intention to appeal.

## II. Sufficiency of Evidence.

 The district court entered findings of fact which in part read:[3]

[T]he defendant was a landowner in Scott County and appeared on April 30, 1975 at the Sheriff's Office in Scott County and surrendered to the Sheriff the six government survey markers that were introduced in evidence and stated to the Sheriff at the time of surrender that he "found these on my premises and I am leaving them with you", it being obvious that some markers had been in the ground encased in concrete, that others had been driven in the dirt and others attached to trees. * * *

Albert Zornes, a registered land surveyor since 1956, Forestry Department, * * * directed survey of line in Scott County between Mr. White's property and the forest * * *, after having advised defendant at a prior date that the line would be run. * * * After the line was run the corners were designated and [the] line marked. [Zornes] identified the markers heretofore introduced in evidence as the kind and type used by the government in its survey * * *. [This] witness further advised that defendant advised him to stay off his property and thus the survey markers were placed off of the survey line a fraction in order to not enter upon the land of the defendant.

Although the Government failed to produce direct evidence of the defendant's alleged illegal conduct, his possession of boundary marking items, some of which showed evidence of recent removal from the ground, his statement that he found them on his own property, and his clearly hostile attitude toward the survey, in the absence of any explanation, supports an inference of substantial weight that White, the possessor of these recently removed items, had himself removed them. Accordingly, we think the evidence, although scanty, was sufficient for the trier-of-fact to find White guilty.

## III. Right to Counsel.

 In federal court the right to counsel extends to all offenses, petty and serious alike. *Argersinger v. Hamlin,* 407 U.S. 25, 36 n. 5, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). While the right may be waived, such a waiver will not be presumed and must be shown to have been knowing and intelligent. *Id.* at 37, 92 S.Ct. 2006.

On this record we cannot find that White knowingly and intelligently waived his right to counsel. While the letter from the attorney (Dunn) states his understanding that Mr. White would represent himself, at the hearing White did not agree. Indeed, Mr. White asserted at the July 15th proceeding that he wanted counsel and he related his unsuccessful attempts to obtain another attorney.

 Of course, the right to counsel is a shield, not a sword. A defendant has no right to manipulate his right for the purpose of delaying and disrupting the trial. *United States v. Sperling,* 506 F.2d 1323, 1337 n.19 (2d Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). However, this record is insufficient to support a finding of intentional manipulation. For all we can tell, appellant may have discharged Mr. Dunn for wholly adequate reasons and may have then proceeded in good

---

3. Although the findings are cast as a summary of each witness' testimony, it is clear that the district court found the facts stated to be true.

faith to attempt to find substitute counsel.

We realize that a court is placed in a dilemma when a previously counselled defendant appears without counsel on the day set for trial. Rule 44 of the Federal Rules of Criminal Procedure suggests an avenue for dealing with this situation at a time preceding the trial. Rule 44 provides as follows:

> (a) Right to Assigned Counsel. Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the federal magistrate or the court through appeal, unless he waives such appointment.

> (b) Assignment Procedure. The procedures for implementing the right set out in subdivision (a) shall be those provided by law and by local rules of court established pursuant thereto.

 The advisory committee note makes it clear that counsel may be appointed where a defendant is unable to find his own lawyer "for reasons other than financial." *See Argersinger v. Hamlin, supra,* 407 U.S. at 36 n.5, 92 S.Ct. 2000. This language is broad enough to permit appointment in cases where the trial court is persuaded that defendant cannot find counsel willing to prepare within what the court feels is a reasonable time.

Subsection (b) allows the court to establish local rules to implement and protect the right to counsel. Pursuant to this provision, local rules of court may be established which would regulate withdrawal by retained counsel. Such rules could obviate or minimize the likelihood of a defendant appearing for trial without counsel and then requesting assistance as a means for delaying proceedings.

 This record does not show any violation of Rule 44 by the trial court. Appellant, who is a property owner and not indigent, made no adequate showing that he was unable to obtain counsel. He did not request that the court appoint an attorney for him. He had secured counsel initially, but apparently discharged him a few days prior to trial. Although afforded a further opportunity to obtain counsel after the presentation of the Government's case-in-chief, White elected to move for dismissal rather than presenting evidence.

 Although the conviction is valid, we cannot affirm his 90-day suspended prison term since appellant did not clearly waive his right to counsel.[4] The Supreme Court was clear that while *Argersinger* was not intended to require the appointment of counsel for "the run of misdemeanors," 407 U.S. at 40, 92 S.Ct. 2006, "[t]he denial of the assistance of counsel will preclude the imposition of a jail sentence." *Id.* at 38, 92 S.Ct. at 2013. Therefore, we vacate the 90-day suspended sentence but affirm the conviction and $50 fine.

---

**4.** "Courts have made it clear * * * that the *Argersinger* doctrine relieves an uncounseled defendant convicted for a misdemeanor only from the penalty of incarceration." Note, *United States Courts of Appeals: 1973–74 Term Criminal Law and Procedure,* 63 Geo.L.J. 331, 476 (1975). The Fifth Circuit has suggested that a suspended sentence may be permitted by *Argersinger. Cottle · v. Wainwright,* 477 F.2d 269, 275 (5th Cir. 1973), *vacated on other grounds,* 414 U.S. 895, 94 S.Ct. 221, 38 L.Ed.2d 138 (1974). However, on direct appeal we are unwilling to affirm the imposition of a suspended prison sentence since the possibility exists of its ripening into unconstitutional imprisonment.