UNITED STATES of America, Plaintiff-Appellee,

v.

Richard LEAVITT, Defendant-Appellant.

No. 79–1289.

United States Court of Appeals, Ninth Circuit.

Nov. 26, 1979.

John W. Tapp, Asst. Federal Public Defender, Seattle, Wash., on brief, for defendant-appellant.

James C. Waldo, Asst. U. S. Atty., Seattle, Wash., on brief, for plaintiff-appellee.

Before WRIGHT and SNEED, Circuit Judges, and LARSON,* District Judge.

PER CURIAM:

The defendant Mr. Richard Leavitt, was convicted of driving in a careless manner in a national park, in violation of 36 C.F.R. § 4.14. He appeals his conviction on three grounds: 1) lack of jurisdiction; 2) insufficient evidence to establish identity; and 3) violation of his right to counsel.

Defendant was driving on Highway 101 in the Olympic National Park on October 23, 1977. It had rained earlier in the day and the road was wet. This was a curvy area of the highway with a speed limit of 45 miles per hour. Defendant had been following another car for some time when he decided to attempt to pass it at a blind "S" curve. A head-on collision with an oncoming camper vehicle resulted. A summons was issued on April 17, 1978, and defendant was tried on October 6, 1978, and November 3, 1978. He was found guilty of careless driving and he was given a suspended ninety-day sentence and placed on three years' probation.

Olympic National Park was established on June 29, 1938. In 1941, the State of Washington ceded exclusive jurisdiction over all territory in the park to the United States. There were no reservations in this act. In 1942, the United States accepted exclusive jurisdiction over the park lands. The State of Washington amended the 1941 Cession Act in 1945. The amendment ceded jurisdiction over all land to be added to the park and added a reservation that the State would retain jurisdiction over what is now Highway 101. It is unclear from the language of the statute whether the state was attempting to reserve jurisdiction over the portions of Highway 101 already in the park, or only those portions to be added. In 1960 the Assistant Secretary of the Interior sent a letter to the Governor of Washington

---

* Honorable Earl R. Larson, Senior Judge, United States District Court for the District of Minnesota, sitting by designation.

accepting jurisdiction over lands to the park in 1943 and 1953, subject to the reservations of the State in the Cession Act.

■ There is no dispute that the accident occurred in the original area of the park. The question then, is whether the United States had jurisdiction over the section of Highway 101 in the original park. Defendant claims it did not because the amended Cession Act reserved jurisdiction over all the highway to the State, and this reservation was accepted by the United States in 1960. The government claimed that no acceptance of the reservation occurred as to that area of the highway within the original park. The United States is clearly correct. The Assistant Secretary's letter refers only to that area of the highway added later and recognized the State's reservation only as to that portion of Highway 101. The government also argues that even if the Secretary had intended to recede jurisdiction to the State over the originally included part of the Highway, he had no authority to do so. A statute allowing the Secretary of the Interior to relinquish partial jurisdiction over park lands was not passed until 1976. This is strong evidence that prior to this time he had no authority in this area.

The second argument of the defendant is that there is not sufficient evidence that he was the person driving the car. He does not appear to claim that he was not the driver, just that the government has not proved that he was. Defendant argues that the only evidence establishing him as the driver of the vehicle was a statement he made to Mr. Steven Kernes, an investigator who arrived at the accident shortly after it occurred. Mr. Kernes asked who the drivers of the cars were and defendant responded that he was the driver of the car which was attempting to pass. The defendant claims that an uncorroborated admission is not sufficient to convict, relying largely on *Smith v. United States*, 348 U.S. 147, 154, 75 S.Ct. 194, 99 L.Ed. 192 (1954) and *Opper v. United States*, 348 U.S. 84, 91, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

In reply, the government contends that there was additional evidence that defendant was the driver of the car. Mr. Riter, the driver of the motorhome involved in the accident, said he spoke with the driver of the other car, a man, after the accident. It could be inferred that he spoke with defendant. The other male person in the car, defendant's stepson, was killed in the crash. In addition, a park ranger, Mr. Lester, testified that he took a statement from a person who identified himself as Richard Leavitt. This statement was taken on the day after the accident and Mr. Lester said it was given by the same individual that he had seen at the hospital after the accident.

■ The government argues that defendant is misapplying the *Smith* line of cases. Those cases do not require that the identity of the accused be established independently of any admission he has made, except in cases where the corpus delicti is inseparably bound up with the identity of the accused; for example, in tax evasion cases. The general rule is that once the corpus delicti has been established, the defendant's admission is enough to link him to the crime. *See Wong Sun v. United States*, 371 U.S. 471, 489–90 fn. 15, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Vega-Limon*, 548 F.2d 1390, 1391 (9th Cir. 1977); *United States v. Daniels*, 528 F.2d 705, 707–08 (6th Cir. 1976); *Kaneshiro v. United States*, 445 F.2d 1266, 1270 (9th Cir.); *cert. denied*, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971); *Rodriquez v. United States*, 407 F.2d 832, 834 (9th Cir. 1969); *Cutchlow v. United States*, 301 F.2d 295, 297 (9th Cir. 1962).

■ Here the corpus delicti can be established independently of establishing the identity of the accused. An accident occurred and the circumstances surrounding it led to the conclusion that someone had driven carelessly. Defendant's admission that he was the driver of the car does not need corroboration in this situation. Nor does there appear to be anything in the record to suggest that his statement was involuntary or unreliable, or that he had any reason to make a false admission. His identity was sufficiently established.

Finally, defendant claims he was deprived of his right to counsel because he had to proceed through the initial day of the trial without the aid of a lawyer. Defendant initially declined a trial before a magistrate on May 4, 1978. He received a letter advising him of the importance of retaining an attorney on May 20, 1978. By August 25, 1978, when he received notice that the trial was set for September 22, he still had not made arrangements for counsel. On September 19, the defendant requested a continuance by phone and followed up with a letter which was received by the court on September 22. The continuance was granted until October 6. Defendant first contacted the federal public defender on October 3. On October 5, the defender told the court he would not be ready to go to trial the next day and asked for a new continuance. The court denied this request. On October 6, the trial date, the defendant renewed his motion for a continuance, and in the alternative, permission for the defender to withdraw because he was not adequately prepared for trial. The court again denied the continuance motion, but allowed the public defender to withdraw. Defendant had to proceed through the government's presentation of its case without the assistance of counsel. At the end of the prosecution case the court continued the trial until November 3, 1978, to allow defendant to prepare his case in defense. On that date, the public defender, who had re-entered the case, filed several motions. However, the defendant did not call any witness of his own or recall any government witnesses.

■ The right to counsel in federal courts is governed by Federal Rules of Criminal Procedure, Rule 44(a) as well as the sixth amendment. The rule provides that every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him. The rules apply to all criminal actions in the federal courts, therefore, defendant was entitled to have counsel. *See Argersinger v. Hamlin,* 407 U.S. 25, 36 fn. 5, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *United States v. White,* 529 F.2d 1390, 1393 (8th Cir. 1976). *See also* 18 U.S.C. § 3006A(a)(4) (West 1979 Supp.).

However, numerous courts have held that in some circumstances a court may constitutionally deny a continuance even when that denial results in the defendant's being unrepresented at trial. Usually this occurs when the defendant engages in a course of conduct which is dilatory and hinders the efficient administration of justice. *See Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *United States v. Burton,* 189 U.S.App.D.C. 327, 331, 584 F.2d 485, 489–91 (D.C. Cir. 1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *United States v. Gates,* 557 F.2d 1086, 1088 (5th Cir. 1977), *cert. denied,* 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978); *United States v. Lustig,* 555 F.2d 737, 744 (9th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978); *United States v. White, supra; United States v. Phifer,* 511 F.2d 960, 962 (4th Cir. 1975); *United States v. Pinto,* 503 F.2d 718, 722–23 (2d Cir. 1974); *United States v. Beaty,* 465 F.2d 1376, 1378–79 (9th Cir. 1972).

When sixth amendment rights to counsel come into conflict with the trial judge's discretionary power to deny continuances, courts apply a balancing of several factors to determine if the trial judge's action was fair and reasonable. The most recent and comprehensive list of factors is found in *United States v. Burton, supra. See also Gandy v. State of Alabama,* 569 F.2d 1318, 1324 (5th Cir. 1978); *United States v. Inman,* 483 F.2d 738, 740 (4th Cir. 1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2394, 40 L.Ed.2d 766 (1974); *Giacalone v. Lucas,* 445 F.2d 1238, 1240 (6th Cir. 1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972). Among the considerations are: the inconvenience to the witnesses, court, counsel and parties; have other continuances been granted; is the request for a delay based on legitimate reasons; is the delay defendant's fault; will denial of the continuance prejudice the defendant.

■ The trial judge in this case denied the motion for a continuance because the government had produced its witnesses for the second time, because of scheduling difficulties, because the defendant had already

been given one continuance and because the court believed defendant had not made an adequate showing of why he did not retain counsel earlier.

Defendant had known of the need to get an attorney for four months prior to the original trial date, and he was given another two weeks to find a lawyer after the initial trial date was continued two weeks at his request. The judge was rightly concerned about the expense and burden to the government of having to produce witnesses several times. The judge did allow defendant and his public defender more time to prepare a defense. The issues at trial were not particularly demanding or complex. When defendant did present his defense, he introduced no witnesses or evidence. The trial judge did not err in refusing to give defendant a continuance.

The conviction is affirmed.