Charles SWIGER, Petitioner,

v.

**Jeffrey A. WOLFE, Warden,
Respondent.**

No. 5:99CV0370.

United States District Court,
N.D. Ohio,
Eastern Division.

July 8, 2002.

---

Thomas R. Wetterer, Jr., David H. Bodiker, Office of the Public Defender Ohio Public Defender Commission, Columbus, OH, for Petitioner.

Stuart W. Harris, Thelma Thomas Price, Office of the Attorney General, Columbus, OH, for Respondent.

## MEMORANDUM OF OPINION AND ORDER

POLSTER, District Judge.

Before the Court is Petitioner Charles Swiger's Petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). For the reasons stated below, the Petition is **DENIED**.

### I. BACKGROUND

On January 17, 1995, a Tuscarawas County grand jury entered a two count indictment against Petitioner for conduct relating to the theft of items from a garage on July 28, 1994. Count one of the indictment was for breaking and entering in violation of Ohio Revised Code § 2911.13 with a specification for a prior offense of violence. Count two of the indictment was for grand theft in violation of Ohio Revised Code § 2913.02.

The trial court assigned Public Defender Terin Hale to Petitioner and set a trial date of January 18, 1995. Petitioner failed to appear for trial on the designated date and was subsequently arrested pursuant to the issuance of a capias warrant. On February 1, 1995, Petitioner filed a *pro se* motion requesting that the court dismiss his attorney "due to a breakdown in attorney-client communication." (ECF No. 1, Ex. 1, Transcript of Pretrial Hearing Proceedings, Feb. 13, 1995, p. 3). Petitioner also requested appointment of new counsel and a continuation of the trial date. *Id.*

On February 13, 1995, the trial court held a hearing concerning Petitioner's motion. At the hearing, Petitioner argued that Attorney Hale should be dismissed for the following reasons:

(1) On January 13, 1995, Attorney Hale met with Petitioner and his wife and indicated to them that Petitioner would more than likely be convicted based upon his past criminal history;

(2) Attorney Hale failed to raise a "speedy trial" issue that he and Petitioner had discussed months before;

(3) Attorney Hale did not obtain transcripts of a preliminary hearing before trial;

(4) Attorney Hale did not move for a continuance based upon the expected filing of a new indictment; and

(5) Attorney Hale never moved for discovery.

*Id.* at 7–8, 9–10. Petitioner further indicated that he did not wish to be represented by any other attorney in the Public Defender's Office. *Id.* at 9.

The Court then heard the testimony of Assistant Prosecuting Attorney David Hipp and Attorney Hale. Attorney Hipp testified that Attorney Hale had raised the

speedy trial issue at a hearing on the day before the original trial date and that the only reason that Petitioner was not aware of the motion was because he had already left the jurisdiction. *Id.* at 18. Attorney Hipp also testified that Attorney Hale had diligently represented Petitioner, and if anything, had been more persistent than other defense attorneys in representing his client. *Id.* at 19. Finally, Attorney Hipp testified that he had provided Attorney Hale with complete discovery several months before. *Id.* at 18.

The Court then questioned Attorney Hale regarding the transcript that Petitioner claimed he had failed to obtain. Attorney Hale testified that he obtained a copy of the transcript several days before the initial trial date. *Id.* at 24. Attorney Hale further testified that while he and Petitioner discussed the possibility of a new indictment being filed, he did not immediately seek a continuance because he was not positive that a new indictment would be forthcoming and felt that if the prosecutor waited until the eve of trial before presenting the new indictment and the Court denied his motion, Petitioner would have a good issue for appeal. *Id.* at 28. Finally, Attorney Hale explained that he and Petitioner had discussed the fact that a new indictment would likely enhance the charge of theft to a felony of the third degree based upon Petitioner's prior record and that such a charge would enhance the sentencing on both cases. *Id.* at 27.

After hearing this testimony, the Court concluded that there were not sufficient grounds for removing Attorney Hale as Petitioner's counsel and gave Petitioner the choice of representing himself or continuing with Attorney Hale:

> From what I've heard in the courtroom today, I'm going to find that removing Mr. Hale for ineffective assistance of counsel is not warranted and will not do that. Your choice is if you do not want Mr. Hale to represent you, I will allow you to represent yourself as your own attorney but will not appoint independent counsel to represent you. It's either Mr. Hale or it's you.

*Id.* at 33. Petitioner responded by stating that he did not wish for Attorney Hale to continue as his attorney, nor did he wish to represent himself. *Id.* at 34. Petitioner also reiterated that he did not want another attorney from the Public Defender's Office to represent him because such a lawyer would be "biased." *Id.* at 35. The court responded by telling Petitioner that it would not appoint private legal counsel and that it expected him to appear for trial the following week regardless of whether he chose to represent himself or elected to have Attorney Hale continue to represent him. *Id.* at 36. The court then gave Petitioner until the start of trial to change his mind regarding representation by Attorney Hale. *Id.* at 36.

Eight days later, Petitioner appeared for trial without an attorney. (ECF No. 1, Trial Transcript, p. 5). After a two day trial, a jury found Petitioner guilty of both counts. *Id.* at 275. The trial court subsequently sentenced Petitioner to a prison term of two to five years for Breaking and Entering and a prison term of three to ten years for Grand Theft, to be served consecutively. *Id.* Although Petitioner expressed a willingness to have Attorney Hale assist him with his appeal, the Court decided to appoint a private attorney. *Id.* at 277–78.

Petitioner filed a timely appeal in which he argued that the trial court erred as follows:

> (1) The trial court erred in overruling Petitioner's motion to dismiss based upon his contention that he had been denied his statutory right to a speedy trial;

(2) Petitioner was denied his right to assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution as well as under Article I, Section 10 of the Ohio Constitution;

(3) The trial court abused its discretion in denying Petitioner's Motion for Continuance in view of the court's contemporaneous decision to relieve appointed counsel from representing Defendant;

(4) The trial court erred in advising the jury why Petitioner was not represented by counsel;

(5) The trial court erred and deprived Petitioner of Due Process of Law in failing to consider and rule upon motions in limine filed on behalf of Petitioner and by allowing the jury to consider Petitioner's stipulation to the specification;

(6) There was insufficient evidence to warrant the conviction of Petitioner for either theft or breaking and entering as a matter of law.

(ECF No. 11, Ex. C). On March 27, 1996, the Tuscarawas County Court of Appeals affirmed the lower court's decision. *Id.* at Ex. E. On May 13, 1996, Petitioner sought review from the Ohio Supreme Court, which denied leave to appeal. *Id.* at Exs. I and K. Petitioner filed a motion for reconsideration which was denied. *State v. Swiger,* 77 Ohio St.3d 1412, 670 N.E.2d 1001 (1996). He then appealed the case to the United States Supreme Court, which denied certiorari. *Swiger v. Ohio,* 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d 179 (1997).

On April 10, 1998, Petitioner filed a petition with this Court seeking a writ of habeas corpus. (ECF No. 1). The petition raises the following ground as the sole basis for relief:

Petitioner was denied his right to the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution at his trial.

*Id.* at 4. On April 15, 2002, Magistrate Judge James S. Gallas issued a Report and Recommendation recommending that the Court deny the petition and issue a certificate stating that an appeal from the decision could not be taken in good faith. (ECF No. 15, p. 11). The Magistrate Judge based this recommendation upon his finding that Petitioner was familiar with the criminal justice system and that he made a voluntary and intelligent decision in waiving counsel. *Id.* at 12. Having reviewed the record and the relevant case law, the Court agrees with the Magistrate Judge's overall conclusion that a constitutional violation did not occur and that the petition should be denied. The Court believes, however, that this case presents a close question of law and that a limited certificate of appealability is in order.

## II. LEGAL ANALYSIS

The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), applies to this case because Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 after the effective date of AEDPA. *Macias v. Makowski,* Case No. 00–2006, 291 F.3d 447 (6th Cir.2002) (citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). Under the AEDPA, a federal court may not grant a writ of habeas corpus to a person in state custody pursuant to a state court judgment unless the judgment: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determina-

tion of the facts in light of the evidence presented in the State court proceeding."[1] 28 U.S.C. § 2254(d).

■ According to the United States Supreme Court, a decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves "an unreasonable application of ... clearly established Federal law" if the "the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A writ of habeas corpus may not be issued simply because the state court issued a decision that erroneously or incorrectly applies clearly established law. *Id.* at 410–11, 120 S.Ct. 1495. Rather, the issuance of a writ is appropriate only if the state court's application of law was objectively unreasonable. *Id.*

Petitioner argues that the trial court did not comply with the dictates of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), when it allowed him to proceed without counsel. In *Faretta*, the United States Supreme Court recognized the right of an accused to represent himself rather than invoke his right to an attorney. In order to exercise this right, however, the accused must "knowingly and intelligently" forgo the traditional benefits associated with the right to counsel. *Id.* at 835, 95 S.Ct. 2525. Moreover, he "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what

he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

In *Fowler v. Collins*, 253 F.3d 244, 247 (6th Cir.2001), the Sixth Circuit relied upon *Faretta* as a basis for reversing a district court's decision to deny a writ of habeas corpus to a prisoner in state custody. In that case, the state court judge asked the petitioner, John Fowler, at his arraignment hearing whether he intended to represent himself. *Id.* at 247. When Fowler answered in the affirmative, the court did not pause to explore the circumstances behind the waiver of counsel or to explain the consequences of such a waiver. *Id.* Rather, the court proceeded with the arraignment, asking Fowler first whether he would waive a reading of the indictment and then whether he would waive an explanation of his Constitutional and statutory rights and privileges. *Id.* The only other time that the court spoke to Fowler about his decision to represent himself was immediately before trial when Fowler was asked to sign a waiver of counsel form that was first read aloud. *Id.* at 248. After reviewing these facts, the Sixth Circuit concluded that the state court judge should have conducted an on-the-record inquiry into Fowler's decision to proceed without counsel and should have explained the dangers and disadvantages of self-representation to him. The Court then held that a writ of habeas corpus should have been granted by the district court because the state appellate court's finding that Fowler's waiver was proper was "an unreasonable application of clearly established Supreme Court precedent." *Id.* at 246.

---

1. The second prong does not apply in this case as Petitioner does not argue that his conviction was based upon an unreasonable determination of facts.

The Court finds that the facts in this case are distinguishable from those in *Fowler*. *Id.* at 249 ("[T]he extent to which a court must probe ... in order to render a waiver of counsel proper varies from case to case...."). In this case, Petitioner waited until just days before his second scheduled trial date to seek the dismissal of his court-appointed attorney. After conducting a lengthy hearing on Petitioner's motion, the trial court correctly concluded that Petitioner's complaints regarding his attorney were baseless.[2] The trial court then gave Petitioner the choice of proceeding with Attorney Hale as counsel, with another Public Defender as counsel, or representing himself. By rejecting the first two options, Petitioner willingly abandoned his right to appointed counsel.

▋ While it is true that an indigent defendant is entitled to appointed counsel, there is no Supreme Court authority for the proposition that an indigent defendant is entitled to counsel of his choosing. In fact, the Supreme Court has held that the Sixth Amendment does not even guarantee a "meaningful relationship" between an indigent defendant and his attorney. *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Moreover, in dicta, the Supreme Court has noted:

> Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately

represented by attorneys appointed by the courts.

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). *See also, United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990) ("The right to counsel of *choice*, unlike the *right* to counsel ... is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel."). Although courts are required to provide indigent defendants with appointed counsel, a defendant may implicitly waive that right by refusing to accept the court's choice of appointed counsel. *See, e.g., United States v. Davis*, 604 F.2d 474 (7th Cir.1979) (upholding waiver where defendant said he did not wish to represent himself, but rejected the other options offered by the court, i.e., continued representation by appointed counsel or having appointed counsel available on a standby basis); *United States v. Moya–Gomez*, 860 F.2d 706, 739 (7th Cir.1988) ("A criminal defendant may be asked to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive."); *United States v. Kelm*, 827 F.2d 1319, 1322 (9th Cir.1987) (quoting *United States v. Leavitt*, 608 F.2d 1290, 1293 (9th Cir.1979)) ("Where a defendant's conduct is 'dilatory and hinders the efficient administration of justice,' a court may deny a continuance even if it results in the defendant being unrepresented at trial.").

▋ After reviewing the record, the Court is convinced that Petitioner impliedly waived his right to appointed counsel

---

**2.** Petitioner's request appears to have been little more than an attempt to delay a trial that he had already postponed once by failing to appear. Indeed, after the close of his trial, Petitioner expressed a willingness to have Attorney Hale represent him on appeal. Al-

though the trial court judge decided to appoint an attorney from outside the Public Defender's Officer, Petitioner's sudden change of heart regarding Attorney Hale suggests that his motives in seeking to dismiss him were purely dilatory.

and that he did so knowingly, voluntarily, and intelligently. Petitioner had considerable prior experience in the criminal justice system and was well aware of his right to appointed counsel. This understanding is apparent from Petitioner's pretrial motion for substitution, his testimony at the hearing on that motion, and his formal protest at the start of trial against being tried without counsel. (ECF No. 1, Ex. 1, Transcript of Pretrial Hearing Proceedings, Feb. 13, 1995, pp. 3, 14, 14; Trial Transcript, p. 9). It is also evident from the record that Petitioner understood the charges against him and the sentence that could result from those charges. (ECF No. 1, Ex. 1, Transcript of Pretrial Hearing Proceedings, Feb. 13, 1995, pp. 11, 32). Finally, the trial court judge clearly conveyed to Petitioner that if he did not choose to accept representation by Attorney Hale or another Public Defender, his only other option would be to represent himself. *Id.* at 33–36. Petitioner had eight days to make a final decision regarding his representation. *Id.* at 36. Given this factual backdrop, the Court finds that the decisions of the trial court and the state appellate court were not contrary to clearly established federal law and that a writ of habeas corpus is not in order.

The Court does, however, believe that the preferred approach in this situation is to leave appointed counsel in place unless the defendant unequivocally asserts his right of self-representation, and the court engages in a meaningful colloquy to ensure that the defendant understands the ramifications of his decision. Although the Court does not believe that *Faretta* requires state courts to abide by such a practice, it acknowledges that another court could reasonably reach a different conclusion. Consequently, the Court grants Petitioner a limited certificate of appealability as to this issue. 28 U.S.C. § 2253(c)(3).

## III. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is **DENIED.** The Court shall, however, issue a certificate of appealability as to whether the trial court unreasonably violated or misapplied clearly established Federal law by failing to require Attorney Hale to continue as appointed counsel despite Petitioner's objections to his representation.

**IT IS SO ORDERED.**