DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Erie County Court of Common Pleas which, following a jury trial, found appellant, Krista Harris, guilty of one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree; one count of theft, in violation of R.C. 2913.02(A)(2), a felony of the second degree; three counts of theft, in violation of R.C. 2913.02(A)(2), felonies of the third degree; five counts of theft, in violation of R.C. 2913.02(A)(2), felonies of the fourth degree; and one count of attempted theft, in violation of R.C. 2913.02(A)(1) and/or (A)(2) and R.C. 2923.02(A), a felony of the fourth degree. Appellant was sentenced on May 22, 2002, to a total of five years of incarceration. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} Appellant appeals her conviction and raises the following assignments of error:
 {¶ 3} "Assignment of Error I
 {¶ 4} "It constituted prejudicial error when Krista Harris was forced to conduct voir dire without the assistance of counsel; and it constituted prejudicial error when the defense counsel, once appointed, was denied a reasonable amount of time to prepare a defense for Krista Harris.
 {¶ 5} "Assignment of Error II
 {¶ 6} "It constituted prejudicial error when the trial court instructed the jury, absent authority, that '*** [w]hen a power of attorney *** does not expressly state that the fiduciary may make gifts, the *** language is insufficient to give the fiduciary the right to make gifts to herself.'
 {¶ 7} "Assignment of Error III
 {¶ 8} "It constituted prejudicial error when the trial court improperly handled an incompetent witness for the prosecution.
 {¶ 9} "Assignment of Error IV
 {¶ 10} "It constituted prejudicial error when the trial court improperly appointed special prosecutor Dean Holman."
 {¶ 11} Appellant was given power of attorney by her great-great aunt, Mary Bell Taylor, in August 2000. Appellant's convictions arose as a result of appellant withdrawing all of Taylor's money from her accounts with Sovereign Bank and First Union National Bank and placing it in appellant's personal account.
 {¶ 12} Appellant was initially indicted on March 12, 2001, an additional 10 counts were added on November 15, 2001, and the indictment was again amended on the day of trial, April 11, 2002. The original trial date was scheduled for July 2, 2001. After twelve continuances, nine of which were at appellant's request, the matter came for trial on April 11, 2002. During the pendency of her case, and up to the day of trial, appellant had four different attorneys representing her, John Kirwan, Denise Demmitt, Elsebeth Baumgartner, and William Summers.[1] Kirwan sought to withdraw because appellant and he "reached an irreconcilable difference as to whether appellant should accept a plea bargain." Demmit withdrew due to a complete breakdown of the attorney-client relationship as a result of appellant's refusal to deal with the merits of the case, return Demmit's file to her, or communicate with counsel. Elsebeth Baumgartner was hired by appellant and entered an appearance as additional counsel, during the time appellant was represented by Demmit. Baumgartner, however, was disqualified and removed from the case because she had filed an affidavit that indicated she had personal knowledge concerning the charges against appellant.
 {¶ 13} Finally, Summers was retained and entered an appearance on February 13, 2002. The trial date was moved, pursuant to appellant's request, to April 15, 2002. On March 18, 2002, due to a scheduling conflict with the Honorable Lawrence Grey,[2] the April 15, 2002 trial date was rescheduled to April 11, 2002.
 {¶ 14} On April 8, 2002, Summers filed a motion to withdraw due to appellant's failure to communicate with him or return his calls. Summers stated that he had no contact with appellant since March 18, 2002. On April 11, 2002, the day of trial, Summers told the court that appellant had left a message with his secretary on April 9, 2002, indicating that she was firing him. Appellant confirmed that she fired Summers and stated that she refused to go to trial with him as her counsel. According to appellant, Summers threatened her by telling her that her failure to cooperate with counsel was a violation of her bond.
 {¶ 15} Appellant repeatedly stated to the trial court that it was her right to have an attorney of her choosing. The trial court told appellant that her right to counsel could be waived by her failure to exercise that right. The trial court stated, "we are going to start the trial *** do you want to proceed pro se or do you want to have the assistance of Mr. Summers?" Appellant responded, "I am not going to trial today with Bill Summers" and stated that she would "not accept court appointed counsel either." Appellant requested a continuance to hire another attorney, Alameda Johnson, who was unavailable for trial that day. The trial court denied her request and ordered that Summers remain at counsel table "in the event [appellant] change[d] her mind."
 {¶ 16} The potential jurors were brought to the courtroom. Before voir dire began, appellant consulted with Attorney Cheryl Goodrum in the hallway. During voir dire, one juror was dismissed for cause. Appellant again conferred with Goodrum in the hallway. The state then began questioning the potential jurors. No additional jurors were dismissed at that time. Thereafter, without having selected a jury, the trial court took a recess for lunch. With the consent and insistence of appellant, Summers was granted permission to withdraw from the case and left the courtroom. Following the lunch break, the trial court adjourned the matter until the following morning to provide appellant additional time to procure replacement counsel; however, the trial court informed appellant that the matter was proceeding for trial the following day, regardless of her ability to find new counsel.
 {¶ 17} The following morning, April 12, 2002, appellant appeared in court without counsel. Voir dire continued. Two more potential jurors were dismissed for cause. Appellant moved for a mistrial, which was overruled. Further discussion concerning whether to grant an additional continuance to allow appellant to obtain counsel was held. The state responded that there was an 81 year-old victim, who had remained in the area for over two years awaiting this trial, despite her desire to return to New Jersey, and that there were a number of witnesses who had traveled from New Jersey for the trial at the state's expense. After considering the matter, the trial court ordered that appellant's bond be revoked. Given appellant's attitude and her unwillingness to submit to the jurisdiction of the court, the trial court found appellant was a flight risk. The trial court ordered appellant to be taken into custody and held in the Erie County jail until the following Monday, at which time the deposition testimony of the victim, Mary Bell Taylor, was to be taken and preserved. The trial court indicated that if appellant did not obtain counsel by Monday, it would appoint substitute counsel for her to advise her during the deposition and trial. The trial court noted that appellant's behavior was a "tactic" designed "consistently to delay this case because the State has an aged witness who may become disabled or die."
 {¶ 18} Rather than be taken immediately into custody, appellant stated, "I will move forward with no attorney and allow you guys to go right on then. I will move forward today. Go right ahead." Thereafter, the trial court suspended the revocation of appellant's bond and voir dire continued. The state requested another potential juror be dismissed for cause; however, the trial court denied the state's request. Appellant was given the opportunity to voir dire the potential jurors, but declined on the basis that she was unprepared and did not have counsel. Appellant's request for a recess to prepare for voir dire was denied. The state then exercised its first preemptory challenge. Appellant did not exercise her first preemptory on the basis that she was not competent to make that determination and because she did not have counsel. The state then exercised its second preemptory challenge.
 {¶ 19} Thereafter, appellant requested a recess, during which she called Attorney Johnson. Johnson indicated that she would be available for trial the following Wednesday. The trial court denied appellant's request for a continuance and appointed attorneys Heather Carmen and Cheryl Goodrum to represent appellant, insofar as they could be present in court that afternoon. The matter was recessed until after lunch on April 12, 2002.
 {¶ 20} In the afternoon on April 12, 2002, Carmen and Goodrum indicated to the trial court that they were "prepared to do the voir dire today." However, insofar as they were not familiar with the charges against appellant, they requested, and were granted, the opportunity to make their opening statement at the beginning of their case. In addition, Carmen and Goodrum objected to going forward that day, but their objection was overruled and the case proceeded. The state indicated that a copy of all matters to be used in court would be provided to counsel, as well as a witness list.
 {¶ 21} Goodrum proceeded to question the potential jurors. Goodrum indicated that she was in the spectator area of the courtroom on April 11, 2002, and had observed portions of voir dire. Defense and the state both exercised preemptory challenges, other potential jurors were excused for cause, and a jury was finally seated and sworn. Appellant requested that she be given the opportunity to cross-examine witnesses herself, insofar as her counsel was not familiar with the facts; however, that request was denied. Appellant then asked, if she proceeded pro se, whether she would be allowed to cross-examine the witnesses herself. The trial court indicated that "that's not going to happen either *** [y]ou've made an election and we're going to proceed in that regard." The trial then began. Following the victim's direct examination by the state, on April 12, 2002, the case was adjourned until the following Monday morning at 9:00 a.m.
 {¶ 22} Appellant argues in her first assignment of error that she was denied the effective assistance of counsel on two bases: (1) she was forced to conduct voir dire without the assistance of counsel; and (2) once defense counsel was appointed, they were denied a reasonable amount of time to prepare a defense. The state responds that appellant was provided counsel throughout the trial, insofar as she had Summers available to her during voir dire, consulted with Goodrum twice during voir dire, and eventually had Goodrum and Carmen represent her throughout the remainder of voir dire and trial. Additionally, the state argues that it was within the trial court's sound discretion to grant a continuance for appellant to retain new counsel and that any error on behalf of the trial court was invited error, due to appellant's dilatory actions. Finally, the state asserts that appellant fails to cite a single alleged error or omission made by her counsel as a result of their last minute appointment to the case and that any perceived error was invited by appellant due to her own actions.
 {¶ 23} It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as well as a right to act as his own counsel during trial, if he so chooses. Faretta v. California (1975), 422 U.S. 806. "The basic right to counsel, however, must be considered along with the need for the efficient and effective administration of criminal justice." State v.Hook (1986), 33 Ohio App.3d 101, 103, citing United States v. Weninger
(C.A. 10, 1980), 624 F.2d 163, 166; and United States v. McMann (C.A. 2, 1967), 386 F.2d 611. As such, in addition to a defendant being able to expressly waive his right to counsel, a defendant's waiver of counsel can be implied from the circumstances of the case. In Hook, for example, the court held that "when a defendant refuses to take effective action to obtain counsel, and on the day of trial requests a continuance in order to delay the trial, the court may, under proper conditions, be permitted to infer a waiver of the right to counsel." Id., citing United States v.Terry (C.A. 5, 1971), 449 F.2d 727; United States v. Hollis (C.A. 5, 1971), 450 F.2d 1207; and United States v. Leavitt (C.A. 9, 1979),608 F.2d 1290.
 {¶ 24} The issue thus becomes, under what circumstance is a trial court permitted to infer waiver. In Hook, the Tenth Appellate District held that "[t]o ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case including the background, experience, and conduct of the accused person." Id., citing, Johnson v. Zerbst (1938), 304 U.S. 458, 464; and Ungar v.Sarafite (1964), 376 U.S. 575. The defendant in Hook had been tried previously, with counsel, on the identical pending charges, but had been granted a new trial. It was in the "new trial" where defendant represented himself. The appellate court held that the defendant "was not inexperienced with the justice system" and noted that he had also been previously convicted of another crime. Insofar as the defendant had ample advance notice concerning the trial date, the appellate court held that it was not unreasonable for the trial court to have concluded that the defendant was attempting to delay the trial by not appearing with counsel on the scheduled trial date. Given the total circumstances of the case, the Hook court held that it was not error for the trial court to deny the defendant's motion to continue the trial date or to infer that the defendant waived his right to counsel. The Tenth Appellate District made a similar finding in State v. Jackson (Sept. 4, 1990), Franklin App. No. 89AP-1344, wherein the court held that the defendant was aware of his right to counsel, having been provided with appointed counsel before dismissing him in favor of private counsel, and had previous contact with the criminal justice system.
 {¶ 25} Other courts, however, have found that it is necessary to ensure that a waiver is knowing and intelligent, even when being inferred. See, e.g., State v. Glasure (1999), 132 Ohio App.3d 227; Statev. Ebersole (1995), 107 Ohio App.3d 288; State v. Weiss (1993),92 Ohio App.3d 681; State v. Ward, Cuyahoga App. No. 81282,2003-Ohio-3015, and State v. Hayes (Aug. 14, 2000), Mahoning App. No. 98 C.A. 130. In fact, when presuming a waiver of the Sixth Amendment right to counsel, the Ohio Supreme Court has held that the record must show "that an accused was offered counsel but intelligently and understandingly rejected the offer." State v. Wellman (1974),37 Ohio St.2d 162, paragraph two of the syllabus. "Anything less is not waiver." Id.
 {¶ 26} In Glasure, Ebersole and Weiss, the courts held that, when determining the existence of a valid waiver, a pre-trial inquiry must be made of a defendant to determine whether he understands the ramifications of proceeding pro se and the possible consequences thereto. Relying on Faretta, supra at 422 U.S. 806, and/or United States v. Von Moltke
(1948), 332 U.S. 708, 724, these courts held that in order for a waiver to be valid, a defendant must be informed of the dangers inherent in self-representation, and that the waiver must be made "with an apprehension of the nature of the charges, the statutory offense included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances of mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Such an inquiry is considered necessary "even when the defendant is seemingly engaging in delay tactics, because such a delaying strategy by the defendant is often employed where the defendant does not understand the crucial role of counsel in criminal cases." Weiss at 685, citing UnitedStates v. Allen (C.A. 10, 1990), 895 F.2d 1577, 1579.
 {¶ 27} In this case, it is clear that appellant had numerous continuances and counsel representing her. However, it was not until the day of trial that she was informed that she would be granted no further continuances to obtain new counsel. We do not find the trial court's denial of a further continuance to be problematic, in and of itself. We certainly recognize a trial court's authority to manage its own docket and, under the circumstances in this case, the court's denial of yet another continuance of the trial date does not appear unreasonable. Additionally, we find that the trial court's finding that appellant's actions were designed to delay the trial was similarly reasonable. Nevertheless, based on the holdings of Wellman, Glasure, Ebersole, andWeiss, we find that the trial court erred by not fully explaining to appellant the ramifications of firing Summers on the day of trial, and the consequences of proceeding pro se, before determining that appellant waived her right to counsel.
 {¶ 28} The trial judge told appellant that Summers was competent and that he would want Summers representing him if he were in appellant's position; however, appellant was never informed regarding the full extent of the indictment against her, which had been amended the morning of trial, was never informed what potential penalties she was facing, and was never explained normal trial procedure, in which she would be expected to participate. See Id. Unlike the defendants in Hook and Jackson, appellant was not familiar with the criminal justice system; rather, according to the record, these convictions were appellant's first offenses.
 {¶ 29} Accordingly, we find that the trial court failed to adequately inform and inquire of appellant concerning the full ramifications and consequences of firing Summers and proceeding pro se. See Glasure, Ebersole, and Weiss. As such, we find that the record does not demonstrate that appellant knowingly and voluntarily, implicitly or expressly, waived her right to counsel. See Wellman. Contrary to the state's argument, we further find that, insofar as it was the trial court's error in not fully informing appellant regarding the potential pitfalls of proceeding pro se, we find that appellant did not invite any error in this instance.
 {¶ 30} Having determined that the record in this case does not demonstrate that appellant knowingly and voluntarily waiver her right to counsel, we must next consider whether appellant, in fact, was denied counsel and whether she was prejudiced. When claiming ineffective assistance of counsel, appellant bears the burden of establishing that counsel's performance was deficient and prejudicial. Strickland v.Washington (1984), 466 U.S. 668, 686.
 {¶ 31} The state argues that appellant was not denied counsel insofar as she had Summers sitting at counsel table with her during voir dire and consulted with Goodrum during voir dire on two occasions. We disagree. Although appellant had counsel available to her for consultation purposes, neither Summers or Goodrum were operating as counsel in appellant's behalf during the initial stages of voir dire. Moreover, on the second day of trial, April 12, 2002, there was a period of time in the morning where the jury was being questioned by the state and no counsel was available to appellant.
 {¶ 32} The state additionally argues that appellant fails to establish prejudice as a result of having no counsel during the initial stages of voir dire or as a result of having counsel appointed to try the case after voir dire had begun. We again disagree. The United States Supreme Court has held that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. [Citations omitted.]" United States v.Cronic (1984), 466 U.S. 648, 658. These circumstances include "the complete denial of counsel *** at a critical stage of [the accused's] trial." Id. at 659.
 {¶ 33} Accordingly, because the record fails to demonstrate that appellant knowingly and voluntarily waived her right to counsel, we find that the absence of counsel during voir dire, a critical stage of trial, was inherently prejudicial to appellant. We find, on this basis alone, that appellant was denied a fair trial. As such, it is unnecessary to consider whether the late appointment of trial counsel was additionally prejudicial to appellant. Appellant's first assignment of error is therefore found well-taken.
 {¶ 34} Based on our ruling as to appellant's first assignment of error, we find appellant's second, third and fourth assignments of error are moot and will not be addressed, pursuant to App.R. 12(A)(1)(c).
 {¶ 35} On consideration whereof, this court finds that appellant was prejudiced from having a fair trial and the judgment of the Erie County Court of Common Pleas is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Court costs of this appeal are assessed to the state of Ohio.
 JUDGMENT REVERSED.
[1] There were two additional attorneys, but one was co-counsel and the other was only temporary, until appellant could get replacement counsel, which she did.
[2] Judge Grey was assigned as the presiding judge when the Honorable Ann Maschari found it necessary to recuse herself.